James W. KING, Plaintiff-Appellant,

v.

HAILEY CHEVROLET COMPANY et al., Defendants-Appellees.

No. 72-1101.

United States Court of Appeals, Sixth Circuit.

June 16, 1972.

Harold H. Gearinger, Chattanooga, Tenn., for plaintiff-appellant; Gearinger, Bowles & Petty, Chattanooga, Tenn., on brief.

T. Maxfield Bahner, Chattanooga, Tenn., for General Motors; Chambless, Bahner & Crawford, Chattanooga, Tenn., of counsel.

Stuart E. Duncan, Chattanooga, Tenn., for Indiana Trailer; Duncan & Breazeale, Chattanooga, Tenn., of counsel.

Before WEICK, McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

James King decided to enter the business of hauling mobile homes and purchased a tractor-truck from Hailey Chevrolet Company in Chattanooga, Tennessee. The length of the truck was shortened by Indiana Trailer Supply, Inc., an Indiana corporation with its principal place of business in Elkhart. The purchase price of the truck plus the cost of the modification by Indiana Trailer was financed by General Motors Acceptance Corporation at its Chattanooga office. Subsequent to the modification, King experienced continuous difficulties with the truck until it completely broke down. He then initiated this action against Hailey Chevrolet, GMAC, and Indiana Trailer. On the motions of GMAC and Indiana Trailer, and following the filing of affidavits and answers to interrogatories, the district court rendered summary judgment for GMAC on the merits and dismissed the complaint as to Indiana Trailer for lack of personal jurisdiction. King appeals that decision.[1]

The appellant claims first, that there exist factual questions concerning the relationship between Hailey Chevrolet and GMAC, and second, that Indiana Trailer had the necessary minimum contacts with Tennessee required by due process for the exercise of personal jurisdiction.

King is a resident of Ringgold, Georgia several miles south of Chattanooga, Tennessee. He knew that for his business he needed a truck no longer than ten feet, but apparently, the smallest available one was fifteen feet in length. He needed the smaller size vehicle because most states limit by statute the length of the combined truck and mobile home to seventy-five feet. Because most mobile homes are sixty-five feet long,

1. Pursuant to Rule 54(b), Fed.Rules Civ. Proc., the district court determined that there was no just reason for delay and expressly directed the entry of a final judgment as to GMAC and Indiana Trailer. Thus the court's decision as to these two defendants is not interlocutory and appellant King may appeal that decision even though Hailey Chevrolet remains a party to the action.

the truck could not exceed ten feet. A truck may, however, be shortened by cutting it into two parts, removing a five foot section of the vehicle, and putting the two main parts back together.

The appellant would not have purchased a truck unless it could have been modified. King apprised Hailey of his needs, and the dealer assured him that the necessary modification could be arranged. The record leaves some doubt as to who actually chose Indiana Trailer Supply, Inc., to perform the necessary adjustment. It is undisputed, however, that Hailey Chevrolet possessed knowledge of the relatively few companies able to perform the desired modification. Also, Indiana Trailer advertised in the "Silver Book," a trade manual distributed by General Motors Corporation to Chevrolet dealers, including Hailey Chevrolet. On at least one other occasion, Indiana Trailer had worked on a vehicle sold by Hailey Chevrolet. In any event, Indiana Trailer was selected.

Before agreeing to sell the truck, Hailey had GMAC confirm that it would finance the purchase by buying the installment sales contract from the dealer. Hailey and King entered into a purchase order contract on September 30, 1970.

Hailey then called Indiana Trailer and the two parties agreed over the telephone on a specific price for the work. The dealer advanced payment to the Indiana corporation. This cost was to be added to the installment sales contract. Thereafter King transported the truck to Elkhart. Ordinarily an employee of the dealer would drive the vehicle, but on this occasion, King drove the truck in order to save the expenses of the Hailey employee.

After Indiana Trailer shortened the truck, appellant began his return home. He first experienced difficulty with the truck while driving through Tennessee. Problems developed in the electrical system; the vehicle vibrated; and the rear end of the truck made a roaring noise. Nevertheless, on October 13, 1970, King and Hailey executed an installment sales contract which was purchased by GMAC.

Thereafter, King experienced constant trouble with the truck, and it finally completely broke down about two months later. Because of these difficulties, King was unable to use the truck and thus lost the source of his income. When King failed to meet the payments for the vehicle, GMAC repossessed. King apparently failed to receive satisfactory corrective work from the dealer. He could not afford to transport the truck to Elkhart, and Indiana Trailer would not pay the expense for returning the truck. King then instituted this action seeking to recover lost income and other damages.

## I

Appellant's theory as to liability on the part of GMAC is that the finance organization acted in concert with Hailey and was as involved with the contract between Indiana Trailer and Hailey as was the dealer. King posits that because GMAC knew of the proposed modification and thereafter financed the cost of the alteration it became a primary party to the contract between Hailey and Indiana Trailer. The district court found no genuine issue as to any material fact concerning the relationship between GMAC and Hailey.

Upon the present record, King was not required to finance his purchase through GMAC. The automobile dealer, prior to completing the sale, merely checked on King's credit and sought to determine whether the installment sales contract would be purchased.

The district court properly held that GMAC was merely a purchaser of commercial paper. There is no suggestion that GMAC was responsible for the alleged negligence which caused King's problems. There are present no facts tending to suggest that GMAC did more than advise the dealer that it would purchase the proposed contract. It was thus proper for the trial court to sustain the motion for summary judgment and to dismiss the action as to GMAC.

## II

Concerning Indiana Trailer, appellant contends that the corporation was amenable to the *in personam* jurisdiction of Tennessee. An assessment of this claim must consider both Tennessee and federal law. In a diversity action, a district court's personal jurisdiction is, of course, determined by the law of the forum. Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964). Here, the applicable law is the Tennessee long-arm statute, T.C.A. § 20–235.[2] While the appellant claims that jurisdiction over the appellee was obtained under subsections (a), (b), (d), and (e) of the statute, we consider only the assertion that jurisdiction over Indiana Trailer was permissible because the claim here arises out of the transaction of business in Tennessee by Indiana Trailer.

Tennessee has declared that its long-arm statute should be construed as asserting jurisdiction over non-residents to the extent permitted by the due process clause of the Fourteenth Amendment. Darby v. Superior Supply Co., 224 Tenn. 540, 458 S.W.2d 423 (1970). Thus we examine Indiana Trailer's affiliation with Tennessee in light of federal constitutional requirements. The principal teaching on the exercise of jurisdiction by one state over the residents of another is, of course, contained in Inter-

national Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Supreme Court declared the now familiar standard:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.*, at 316, 66 S.Ct. at 158.

The Court further stated:

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. *Id.*, at 319, 66 S.Ct. at 160.

In seeking to implement the Court's charge to achieve that fundamental fairness consistent with the orderly administration of the law, this court established a framework for determining the outer limits of *in personam* jurisdiction based on a single act. Southern Ma-

---

2. T.C.A. § 20–235 (1971 Supp.), Tenn. Pub. Acts of 1965, ch. 67, § 1:

*Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(a) The transaction of any business within the state;

(b) Any tortious act or omission within this state;

(c) The ownership or possession of any interest in property located within this state;

(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

"Person" as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

T.C.A. § 20–236 provides for service of process on the Secretary of State and forwarding by registered mail.

chine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968). Since Indiana Trailer's activities in Tennessee admittedly are not sufficient for Tennessee's exercise of jurisdiction over a cause of action arising outside the state, that framework is the reference applicable in this case.

In *Southern Machine* we noted that: "the doing of an act or the causing of a consequence in the forum state by the defendant can satisfy the requirements of the 'minimum contacts' test," *Id.*, at 380. Three criteria for determining the permissible limits of jurisdictional due process were stated in *Southern Machine*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[3]

■ In applying these criteria to the present factual situation, we first determine whether Indiana Trailer purposefully availed itself of the privilege of transacting business in Tennessee.[4] That corporation would have transacted business in Tennessee if "obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state. . . ." *Id.*, at 382. Here, King would not have purchased the truck if it could not have been shortened. Indiana Trailer agreed to modify the vehicle and thus set in motion the sale and, of course, the financing of the purchase. Indiana Trailer's agreement thus directly involved two Tennessee businesses and clearly had a realistic impact on the commerce of that state. A secondary impact occurred when as a result of Indiana Trailer's alleged negligence, King was unable to meet his financial obligations and GMAC was forced to repossess the truck.

3. This approach has been described as too restrictive. *See* Comment, Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness, 69 Mich.L.Rev. 300, 312 (1970), wherein it is said that: "[t]he primary fault with this approach is that it is unnecessarily restrictive— while a court may be assured that it does have jurisdiction if these three factors coincide, jurisdiction may also exist when they do not. For example, although the second factor was not present in the *Perkins* case [Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)] jurisdiction was properly recognized because of the substantial contacts existing between the defendant and the forum state. The three-pronged test does have the virtue of easy application, but that positive factor is outweighed by its restrictiveness."

4. Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958), stated this requirement in reminding that the bounds of due process had not evaporated. In stressing that the defendant must have some meaningful contact with the forum state, the Court required that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, at 253, 78 S.Ct. at 1240. Of this criterion, one commentator said that "Mr. Chief Justice Warren reached [a] fair result . . . but by a line of analysis that in all charity and after mature reflection is impossible to follow, no less to relate." Hazard, A General Theory of State-Court Jurisdiction, 1965 Sup. Ct.Rev. 241, 244 (1965). In applying this standard, courts have sought a realistic and reasonable result. This is especially true in products liability litigation when, for example, courts seek to determine if an alleged tortfeasor has committed a tortious act within the forum state. Seemingly, foreseeability that a shipped product may eventually reach a state is considered to satisfy the requirement that the defendant purposefully avails itself of conducting activities within the forum state. *See, e. g.*, Dawkins v. White Products Corp. of Middleville, Michigan, 443 F.2d 589 (5th Cir. 1971) ; Scafati v. Bayerische Motoren Werke AG, 53 F.R.D. 256 (1971) ; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).

Indiana Trailer purposefully availed itself of the opportunity of acting in Tennessee if it "should have reasonably foreseen that the transaction would have consequences in that state." *Id.*, at 382–383. Here, the defendant continuously advertised in the forum state. It sought to receive business from Tennessee dealers and it succeeded. Indiana Trailer foresaw the immediate consequence of enabling Hailey Chevrolet to make the sale, and should have foreseen the potential consequences resulting from any negligent workmanship.

Appellee argues that it has no agents in Tennessee and is not qualified to do business there. It maintains that Hailey sought out its services. In *Southern Machine* we cautioned against undue emphasis on immaterial matters and focused upon the business realities of the transaction with a view toward achieving fairness for the defendant. That approach applies here.[5]

■ We next consider whether the cause of action arises from business transacted in the state by Indiana Trailer. There can be no doubt that King's action arises from the appellee's associations with Tennessee. As a result of the appellee's agreement with Hailey Chevrolet to shorten the truck, the sale was consummated. Also as a result of appellee's alleged negligence, King's troubles (as well as those of GMAC and Hailey) occurred.

■ The third criterion is whether Indiana Trailer's involvement with Tennessee is substantial enough so that the exercise of personal jurisdiction over the appellee would be fair. The answer depends upon "whether Tennessee has an interest in resolving the conflict at issue. . . ." *Id.*, at 384. The appellee has continuously advertised in Tennessee and seeks to continue its transactions with dealers in that state. The present transaction was intimately connected with two corporations of the forum state and has resulted in economic repercussions and a lawsuit there. TCA § 20–235(a) suggests an interest in any cause of action arising out of the transaction of any business in Tennessee and nothing appears here to indicate a reason for the states indifference to the consequences of Indiana Trailer's activities.

The judgment of the district court is affirmed insofar as it sustained GMAC's motion for summary judgment. Insofar as the action was dismissed as to Indiana Trailer, the district court's judgment is reversed and the action is remanded for further proceedings consistent with this opinion.

---

5. Appellee maintains that Beal v. Caldwell, 322 F.Supp. 1151 (1970), closely parallels the instant case and contends that the result there should obtain here. In *Beal* a Tennessee resident sought to obtain personal jurisdiction over an individual resident of North Carolina who had advertised a plane for sale in a magazine circulated in all fifty states. The Tennessee plaintiff had purchased the plane which ultimately crashed in Tennessee. The district court found no basis for *in personam* jurisdiction under the long-arm statute. *Beal* followed Darby v. Superior Supply Co., *supra*, and the analysis utilized in both cases was essentially a determination of whether the exercise of personal jurisdiction would be fair and just. The district court cited the Tennessee Supreme Court's observation that what may be fair as to corporations may not be such as to individuals. The district court then distinguished *Southern Machine* as involving a foreign corporation which sought to avail itself of profit-making activity in Tennessee through a commercial agreement having foreseeable economic repercussions in that forum. We do not quarrel with *Beal* but find it inapposite since the apparent controlling considerations there do not apply here. Nor do we take the opportunity to seek to explain other cases. Each case necessarily turns upon its own unique facts and special considerations and often ultimately involves a subjective judgment as to what is fair. *See, e. g.*, Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533, 577 (1963).