Henry J. WELLER, Plaintiff-
Appellant,

v.

CROMWELL OIL COMPANY et al.,
Defendants-Appellees.

No. 74–1350.

United States Court of Appeals,
Sixth Circuit.

Decided Oct. 17, 1974.

Harry Phillips, Chief Judge, dis-
sented and filed opinion.

Bruce Tittel, John D. Crane, Wood,
Herron & Evans, Donald F. Papner, Cin-
cinnati, Ohio, for plaintiff-appellant.

Samuel M. Allen, A. Jeffrey Smith,
Strauss, Troy & Ruehlmann, Cincinnati,
Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and
WEICK and ENGEL, Circuit Judges.

WEICK, J., delivered the opinion of
the Court, in which ENGEL, J., joined.
PHILLIPS, C. J., (pp. 933–935) filed a
dissenting opinion.

WEICK, Circuit Judge.

In this appeal, we construe Ohio's long-arm statute, Ohio Rev.Code § 2307.-382.[1]

Under this statute, plaintiff Weller, a resident of Cincinnati, Ohio, sought to obtain jurisdiction of the United States District Court for Southern Ohio over two corporations organized under the laws of California with their offices and places of business in that state and over two of their officers, also residents of California.

In his complaint for damages, Weller, in five counts, alleged a breach of two distributor contracts entered into with Cromwell Oil Company, fraud and misrepresentation in connection with their negotiations, violation of the Ohio Deceptive Trade Practices Act, [Ohio Rev. Code § 4165.02(E), (G) and/or (I)], violation of the Lanham Act, [15 U.S.C. § 1125(a)], and violation of sections 3, 4 and 12 of the Clayton Act [15 U.S.C. §§ 14, 15 and 22] and for violations of sections 1 and 2 of the Sherman Act [15 U.S.C. §§ 1 and 2]. The only issue in this appeal relates to the jurisdiction over the individuals.

The two officers were Bernard Plotkin, who was President of both corporations, and Harold Plotkin, who was Vice President of Cromwell Oil Company and Secretary and Treasurer of Cromwell Industries, Inc. With respect to the individual officers, Weller claimed that each made false representations to him in telephone conversations and in advertising literature sent through the mails from California to Ohio as a result of which he was induced to enter into the distributor contracts with Cromwell Oil Company.

The distributor contracts were entered into on February 19, 1970 and May 19, 1970 and gave exclusive rights to Weller to purchase and sell at retail Cromwell products in certain counties in Ohio and Kentucky. The second contract merely added additional territory. Cromwell Industries, Inc. was the assignee of the contracts and was alleged to have assumed the obligations thereof. Under these two contracts, over a period of two years the corporate defendants shipped to Weller $40,000 worth of their products.

The two contracts were accepted and signed by a corporate officer in California and are California contracts.

The complaint alleged with respect to the individuals:

8. Upon information and belief, defendant Harold Plotkin and/or defendant Bernard Plotkin have:

(A) transacted business in this state;

(B) contracted to supply goods and services in this state; and/or

---

1. Ohio Rev.Code § 2307.382

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using, or possessing real property in this state;

(7) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

(C) caused the tortious injuries to plaintiff in this state as more fully described hereinafter.

The complaint also alleged in conclusory language that the corporations were the alter ego of the individual officers and attempted to pierce the corporate veil.

Messrs. Plotkin filed a motion to quash service of summons and dismiss for lack of jurisdiction and filed affidavits in support thereof. Copies of the affidavits are appended hereto as Exhibits A and B. Plaintiff filed an affidavit in response, a copy of which is appended hereto as Exhibit C.

The District Court granted the motion to quash and to dismiss. Plaintiff has appealed. We affirm.

The affidavits of Messrs. Plotkin contain positive statements that they are both residents of California; that they were served with process by registered mail received in California; that their contact with plaintiff was only as officers of Cromwell Oil Co.; that their contact with plaintiff was in written correspondence and they spoke to plaintiff on the telephone from their offices in California; that Harold Plotkin had not been in Ohio during any of the times mentioned in the complaint; that Bernard Plotkin had not been in Ohio since May, 1971, at which time he was in Cleveland on another matter involving Cromwell Oil Co.

It is obvious that there was no truth in the allegations on information and belief contained in the complaint that Messrs. Plotkin individually transacted business in the state of Ohio and contracted to supply goods and services in this state.

The affidavit of Weller states that with respect to the distributor contract of February 19, 1970 "he received, in Ohio, from defendants Plotkin or Cromwell Oil Company, advertising literature which contained some of the misrepresentations. . . ." On its face, this affidavit, in the disjunctive, is ambiguous and insufficient to establish that the Plotkins individually sent the literature to Weller in respect to the first contract.

With respect to the second contract the affidavit states that the Plotkins made misrepresentations to Weller in Ohio over the telephone.

The Weller affidavit further alleged that "defendants Plotkin or Cromwell Oil Company or both sent into the state of Ohio authorized agents to negotiate the provisions of Exhibit B [the second contract] . . ." and that the agents made misrepresentations. Here again we have disjunctives in the affidavit. It can hardly be interpreted as a positive statement sufficient to support jurisdiction, that the Plotkins sent their agents, rather than agents of the corporate defendants who were negotiating a distributor contract. With the use of this ambiguous language, it can reasonably be interpreted that the agents were agents of the corporation. This is shown by the further allegation that during the negotiations for the contract the agents called Bernard Plotkin relative to the negotiations and the representations. From all of this it can be inferred that the agents at all times were acting within the course and scope of their employment.

It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation. Wilshire Oil Company of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969); Path Instruments International Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y. 1970). It was because of the activities of the officers and agents that plaintiff sought jurisdiction over the corporations.

The burden of proof to establish jurisdiction over the individuals was upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Schuckman v. Rubenstein, 164 F.2d 952 (6th Cir. 1947).

Where a motion to quash and dismiss is filed, supported by affidavits,

the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction. In this respect the rule is similar to a motion for summary judgment under Rule 56(e), Fed.R.Civ.P.

In the present case, plaintiff submitted only an ambiguous affidavit in the disjunctive which does not set forth specific facts showing jurisdiction.

In the District Court and on appeal plaintiff relied solely on the following provision of the long-arm statute: "(3) Causing tortious injury by an act or omission in this state."

Under this statute the tortious act causing the injury must be committed in Ohio.

■ It is clear from the positive affidavits of Messrs. Plotkin that they were never in the state of Ohio to commit any act or omission. There is no evidence that any agent of anyone was in the state of Ohio to negotiate the first contract. With respect to the second contract, we previously pointed out that the affidavit of Weller can be reasonably read that the agents which Plotkins sent into the state to negotiate a distributor contract for Cromwell Oil Co. were employees and agents of the corporation. Even though authorized or instructed to come to Ohio by the Plotkins, this did not constitute the corporate agents as agents of the individual officers. Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966).

The telephone conversation between the agents in Ohio and Bernard Plotkin in California was proof indicating that the agents had authority from an officer of the corporation to conduct the negotiations for the second contract and to make representations. In other words, the corporate agents were at all times acting within the course and scope of their employment. It was not proof that the agents were acting for the Plotkins individually.

In the District Court, Weller relied on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), where misrepresentations were made by a non-resident over the telephone and through the mails. The Court held that when the non-resident corporate defendant knowingly sends into a state a false statement with the intent that it should be relied on, that for jurisdictional purposes, the defendant has acted within the state. Only the corporate defendant was held subject to the long-arm statute and not any officer of the corporation.

*Murphy*, however, was rejected by the Court of Appeals for the District of Columbia in Margoles v. Johns, 157 U.S. App.D.C. 209, 483 F.2d 1212 (1973). In that case, Johns, an agent of "The Journal" called the office of a congressman in the District of Columbia from the newspaper's office in Wisconsin and made slanderous statements of and concerning Margoles. In an action for damages for slander, filed by Margoles against both the agent and the newspaper, the District Court granted defendants' motion to dismiss the complaint for lack of jurisdiction.

The Court of Appeals in an opinion written by Circuit Judge Tamm, held:

The "act," of course, is the act of the alleged tortfeasor—here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact. The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the Uniform Act grant jurisdiction that is otherwise lacking. Unless we wish to delve into a magical mystery tour of "projecting presences," we must find that no jurisdiction can be afforded by virtue of section (a)(3). (*Id.* at 1218.)

In *Margoles*, the Journal for a number of years had maintained offices and three news gathering agents in the District of Columbia.

We are persuaded that the decision in *Margoles* is sound, and we will follow it.

The conclusory allegations seeking to pierce the corporate veil in the complaint are not stated in the affidavit of Weller. They are insufficient to establish jurisdiction over the officers. Unicon Management Corp. v. Koppers Co., *supra.*

We construed section A(1) [transacting any business in this state] of the Ohio long-arm statute in In-Flight Devices Corp. v. Van Dusen, 466 F.2d 220 (6th Cir. 1972), and in M & W Contractors, Inc. v. Arch Mineral Corp., 466 F. 2d 1339 (6th Cir. 1972). A similar provision in the Tennessee long arm statute was construed in King v. Hailey Chevrolet Co., 462 F.2d 63 (6th Cir. 1972).

In the present case, as pointed out before, the affidavits of Messrs. Plotkin were positive to the effect that they never engaged in any business in Ohio. The affidavit of Weller contained no proof to the contrary.

██ We agree with the District Court that the plaintiff did not meet his burden of proof to establish jurisdiction over the individual defendants. There was no evidence that the individual defendants committed any act or omission in the state of Ohio which injured the plaintiff.

No Ohio case has been cited to us by Weller and our research has not disclosed a single holding of an Ohio court supporting his position. We have found no persuasive authority elsewhere. We are not willing to extend the Ohio long-arm statute to cover this case.

But even if the statute were construed to permit suit in Ohio we would still be faced with grave questions as to its constitutionality. We have serious doubt whether the activities of the corporate officers in behalf of the corporations set forth in Weller's affidavit are sufficient so as to make it reasonable and just, consistent with traditional notions of fair play, and in conformity with due process requirements of the Fourteenth Amendment that the individuals be subjected to suit in Ohio to enforce personal liability arising out of such activities. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See also McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denkla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

If such suits against officers of national corporations were ever permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer who claims that they constitute misrepresentations.

In our opinion, the activities of the officers in behalf of the corporate defendants did not confer jurisdiction over the individuals. Affirmed.

## EXHIBIT A

STATE OF CALIFORNIA ⎱ SS
COUNTY OF LOS ANGELES ⎰

HAROLD PLOTKIN, being duly sworn, states:

1. That he is the defendant referred to in the above entitled action.

2. That at all times mentioned in the Complaint he was the Vice President of Cromwell Industries, Inc., a California corporation and Secretary-Treasurer of Cromwell Oil Co., a California corporation.

3. That he is now and at all times during the last ten years has been a resident of the State of California. At the time that he was served by mail in this matter he was and now is residing at 4911 Fulton Avenue, Sherman Oaks, California. He is a registered voter in Los Angeles County, and he has not resided outside the State of California since 1938.

4. Acting as an officer of Cromwell Oil Co., he engaged in written correspondence with the plaintiff, HENRY WELLER, and has spoken to him on the telephone from his office in Los Angeles, California, on occasion.

5. At no time has he dealt with Mr. Weller in any capacity other than as an officer of the California corporation.

6. At no time during the time referred to in the Complaint was he in the State of Ohio, and he has not been in the State of Ohio.

/s/ HAROLD   PLOTKIN

SWORN TO BEFORE ME this 7th day of November, 1972.

/s/ CAROL A. REHDER

(OFFICIAL SEAL)

Notary Public for California

EXHIBIT B

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES } SS

BERNARD   PLOTKIN, being   duly sworn states:

1. That he is the defendant referred to in the above entitled action.

2. That at all times mentioned in the Complaint, he was the President of Cromwell Industries, Inc., a California corporation, and President of Cromwell Oil Company, a California corporation.

3. That he is now and at all times during the last ten years has been a resident of the State of California. At the time that he was served by mail in this matter he was and now is residing at 9473 Rempert Lane, Beverly Hills, California. He is a registered voter in Los Angeles County, and he has never resided outside the State of California.

4. Acting as an officer of Cromwell Oil Company he engaged in written correspondence with the plaintiff, HENRY WELLER, and has spoken to him on the telephone from his office in Los Angeles, California, on occasion.

5. At no time has he dealt with Mr. Weller in any capacity other than as an officer of the California corporations referred to above.

6. At no time during the time referred to in the Complaint was he in the State of Ohio; and he has not been in

the State of Ohio since May 1971 at which time he was in Cleveland Ohio, to negotiate   another   matter   involving Cromwell Oil Company.

/s/ BERNARD PLOTKIN

SWORN TO BEFORE ME this 7th day of November, 1972.

/s/ CAROL A. REHDER

(OFFICIAL SEAL)

Notary Public for California

EXHIBIT C

AFFIDAVIT OF HENRY
J. WELLER, JR.

HENRY J. WELLER, JR., being duly sworn, deposes and says as follows:

(1) That he is the Henry J. Weller who is the plaintiff in Civil Action 8567 pending in the Federal District Court in the Southern District of Ohio and that he is providing this affidavit in support of "Plaintiff's Memorandum In Answer To Defendants Harold Plotkin's and Bernard Plotkin's Motion To Quash The Return Of Summons And Complaint And To Dismiss For Lack Of Jurisdiction Over The Person" in said Civil Action;

(2) That he has read the Complaint filed in Civil Action 8567 and that he believes all statements and allegations made therein are true and correct;

(3) That some time in 1969 he saw an advertisement in a Cincinnati newspaper advertising the availability of a Cromwell distributorship, and that as a result thereof he entered into negotiations with Cromwell Oil Company which culminated in a distributorship agreement signed by defendant Harold Plotkin (Exhibit A hereto);

(4) That prior to entering into said distributorship agreement, Exhibit A, he received, in Ohio, from defendants Plotkin or Cromwell Oil Company, advertising literature which contained some of the misrepresentations about which he complains of in said Complaint filed in Civil Action 8567;

(5) That after entering into Exhibit A hereto he decided, for several reasons, to enter into another distributorship agreement. One reason for doing so was that he was informed by Cromwell Oil that in order to do business outside of the territory specified in Exhibit A he would have to enter into another agreement with Cromwell Oil;

(6) That thereafter he began negotiations with Cromwell Oil and defendants Plotkin concerning a second distributorship agreement (Exhibit B hereto);

(7) That in connection with the negotiations relating to Exhibit B hereto defendants Plotkin made, over the telephone, some of the misrepresentations about which he complains in the Complaint filed in Civil Action 8567 while he was present in the State of Ohio;

(8) That in connection with the negotiation of Exhibit B hereto defendants Plotkin or Cromwell Oil Company or both sent into the State of Ohio authorized agents to negotiate the provisions of Exhibit B with him;

(9) That said agents made misrepresentations to him in Ohio about which he complains in said Complaint;

(10) That during the negotiations with said agents which took place in Ohio, said agents contacted defendant Bernard Plotkin by telephone to discuss with him the representations and the negotiations;

(11) That as a result of the misrepresentations made by the agents he decided to enter into Exhibit B;

(12) That as a result of said negotiations he received from defendant Bernard Plotkin through the mails an unsigned copy of Exhibit B and that he signed said agreement in Ohio and returned it to defendant Bernard Plotkin who signed the agreement;

(13) That as a result of said distributorship agreements A and B, Cromwell Oil Company or Cromwell Industries, Inc. have shipped to him in Ohio over Forty Thousand Dollars ($40,000.00) in products over the last two (2) years; and

(14) That he knows that there are several other Cromwell distributors in Ohio.

And further affiant sayeth naught.

/s/ HENRY J. WELLER, JR.

Sworn to and subscribed to before me this 13th day of December, 1972.

(SEAL) /s/ BRUCE TITTEL
Notary Public, State of Ohio.

PHILLIPS, Chief Judge (dissenting).

I respectfully dissent. I would reverse the order of the District Court on the authority of In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F. 2d 220 (6th Cir. 1972); King v. Hailey Chevrolet Co., 462 F.2d 63 (6th Cir. 1972); and Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

In *In-Flight*, this court concluded that the Ohio legislature in adopting its long arm statute with respect to the transaction of business in the state intended to extend the jurisdiction of its courts to the constitutional limits. 466 F.2d at 224–225. See 466 F.2d at 229–231 for a discussion of the Ohio long arm statute as it relates to alleged tortious conduct rooted in a commercial transaction, which in part is what is alleged here.

I consider the case on which the majority places reliance, Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973), to be distinguishable factually from the case at bar. In *Margoles*, there was only a projection over the telephone of a voice into the District in which the appellant was asserting jurisdiction. Contending that "projecting one's presence" by means of a telephone call into the District was an insufficient basis on which to found personal jurisdiction over the nonresident telephone caller, the District of Columbia Circuit affirmed the District Court's order dismissing the action.

In the present case, however, the individual defendants, residents of California, are charged to have had considera-

bly more "contacts", International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), with Ohio than mere projection of their voices over a telephone into the State. Here there were allegations respecting written correspondence between the individual defendants and the plaintiff-appellant Weller to induce Weller to sign one of the distributorship agreements and allegations of a scheme in violation of the antitrust laws by the individual defendants to impose and enforce in Ohio certain territorial restrictions in the distributorship agreements which were signed by Weller in Ohio. I do not read the statement in the affidavit of Weller, which is relied on by the majority, with respect to these three "contacts" of the individual defendants with Ohio to be worded in the disjunctive. Even with regard to the receipt of advertising literature in Ohio and the sending of agents to Ohio, the two areas in which the affidavit of Weller employs the disjunctive, there are express allegations in the answer memorandum filed in response to the motion to dismiss that the individual defendants (as opposed to the individual defendants *or* the corporate defendants) sent information through the United States Postal Service to Ohio and sent agents to Ohio. Considering all these circumstances, I would hold that the present case is materially different from *Margoles* and would follow what I consider to be the established precedents in this Circuit.[1] *In-Flight, supra; King, supra; Southern Machine, supra.*

The pertinent facts of this case, in my view, are considerably more close to those in Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), than those in *Margoles*. In *Murphy*, as in this case, misrepresentations allegedly were made both over the telephone and through the mails. The First Circuit held in *Murphy* that when a nonresident defendant (albeit a corporation in that case) knowingly sends into a state a false statement with the intent that it should be relied on, the defendant has acted within the state for jurisdictional purposes.

Further, the sending of correspondence and literature through the mails makes this case comparable to McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee*, the only contacts of a Texas insurance company with California were the mailing of certain certificates and premium notices into California and the receiving of the signed certificates and premium payments by mail from California on only one policy insuring a California resident.

The Supreme Court upheld the jurisdiction of a California court over the Texas insurance company in a suit by a California beneficiary of the policy, saying: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State [California]". 355 U.S. at 223, 78 S.Ct. at 201.

For the reasons set forth above, I would hold that the District Court erred in deciding that the activities of the individual defendants or the consequences caused by them did not have "a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant[s] reasonable" (the third criterion for determining the outer limits of *in personam* jurisdiction, as set forth in *Southern Machine, supra,* 401 F.2d at 381). In my opinion, the connection of these individual defendants with the state of Ohio, as is alleged here, constitutes sufficient "minimum contacts", *International Shoe, supra,* for the District Court to exercise jurisdiction over them.

Finally, I do not share the doubts of the majority that if the Ohio long arm

---

1. The District Court's threshold determination that an individual corporate employee may be personally liable for tortious conduct committed while acting on behalf of his corporate employer is not challenged on appeal. *See* 19 Am.Jur.2d, Corporations § 1382 (1965).

statute is construed to permit service on these nonresident individuals and jurisdiction over them there would be "grave questions as to its constitutionality". Weller alleged in his complaint that the individual defendants made their misrepresentations with intent to deceive him about the distributorship agreements which he ultimately signed.

"The element of intent . . . persuades . . . [me] that there can be no constitutional objection to . . . [Ohio] asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby 'purposefully avail[ed] . . . [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed. 2d 1283 (1958)." *Murphy, supra,* 460 F.2d at 664.