IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2019

## JOHN RIEBSAME v. BRAD SCHEMEL

**Appeal from the Circuit Court for Hamilton County
No. 18C709        Ward Jeffrey Hollingsworth, Judge**

_____

### No. E2018-01798-COA-R3-CV

_____

A truck driver sued his former employer for damages allegedly resulting from a phone call made by the former employer to the driver's new employer. The trial court dismissed the driver's complaint based upon lack of personal jurisdiction, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

John J. Riebsame, Trevose, Pennsylvania, pro se.

Jeffrey G. Granillo and Nathan L. Kinard, Chattanooga, Tennessee, for the appellee, Bradley Schemel.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

The facts before the court on appeal depend upon the procedural posture of the case. John Riebsame, a former employee of Holland Enterprises ("Holland"), filed a complaint in the Circuit Court for Hamilton County, Tennessee on June 18, 2018, against Bradley Schemel, the vice president of Holland,[1] a trucking company headquartered in Mapleton, North Dakota. On July 20, 2018, Mr. Schemel filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(2) and (4) for lack of personal jurisdiction and insufficient service of process. With his motion, Mr. Schemel submitted his own affidavit, the contents of which will be detailed as relevant below. Mr. Riebsame filed a

_____
[1] Although the complaint alleges that Mr. Schemel is the president of Holland, Mr. Schemel submitted an affidavit in which he testified that he is the company's vice president. Mr. Riebsame has not rebutted this statement.

response. On September 7, 2018, the trial court entered an order granting Mr. Schemel's motion to dismiss for lack of personal jurisdiction and dismissing Mr. Riebsame's complaint. Mr. Riebsame appeals.

As our Supreme Court stated in *First Community Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369 (Tenn. 2015), "When considering a defendant's 12.02(2) motion, a trial court 'must take all factual allegations in the plaintiff's complaint and supporting papers as true' and must 'resolve all factual disputes in the plaintiff's favor.'" *First Cmty. Bank*, 489 S.W.3d at 382 (quoting *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn. 2013)). A court's determination regarding the exercise of personal jurisdiction is a question of law, which we review de novo. *Id*.

Thus, we will set forth the pertinent allegations of Mr. Riebsame's complaint and view them in the light most favorable to him. Mr. Riebsame was fired by Holland on April 20, 2018. He needed to travel to Markam, Illinois to attend orientation for a new job with U.S. Xpress, out of Chattanooga, Tennessee. Holland agreed to provide a rental car for Mr. Riebsame through its account with Enterprise Rent-A-Car, and Mr. Riebsame paid Holland for a four-day car rental. Because of health problems and stress, however, Mr. Riebsame needed to use the car for more than four days, and he called Holland to arrange payment for the extra days. He alleges that the following events then occurred:

> When I called the Defendants office on or around 3 May to get a working phone number for the local Enterprise car rental near Fargo to pay for the extra time I had the car, the Defendants office called right back and the Defendant got on the phone and told me he called my future employer U.S. Express of Chattanooga Tennessee and told them I stole his rental car. . . . He said he wanted me to return the car immediately which I did. The Defendant also said he reported the car stolen. I confirmed with my recruiter . . . at U.S. Express that the Defendant called them and said I stole his rental car. The U.S. Express recruiter also told me because of the Defendants call, I was permanently unhireable.

According to Mr. Riebsame, he attempted to pay for the additional days "but Enterprise car rental required payment to be made to the location where the car was rented and they[2] didn't return my calls or answer their phone."[3] Mr. Riebsame alleges that, as a result of Mr. Schemel's actions, he lost $2000 in security deposits and his final paycheck from Holland, was "permanently prevented from renting a car from Enterprise car rental," and sustained physical, emotional, and financial damages. The exact nature

---

[2] The word "they" appears to refer to the Enterprise rental personnel at Holland.

[3] Much of Mr. Riebsame's complaint details the circumstances preceding and surrounding his termination from Holland. These allegations are not relevant to this appeal.

of the causes of action brought by Mr. Riebsame is not clear. His complaint does, however, include a request for damages for libel, slander, and defamation of character.

Mr. Schemel filed a motion to dismiss Mr. Riebsame's complaint for lack of personal jurisdiction and insufficient service of process on July 20, 2018. In support of his motion, Mr. Schemel submitted his own affidavit, which includes the following pertinent statements:[4]

9. I do not reside at the Holland Enterprises' place of business. My home address is elsewhere in North Dakota.

10. Through my experience in the trucking industry, I am generally familiar with the operations of U.S. Xpress, a trucking company in competition with Holland Enterprises.

11. U.S. Xpress, while based in Chattanooga, Tennessee, has operations in numerous states, including Illinois, Indiana, Texas, Georgia, Pennsylvania, Ohio, South Carolina, and Florida.

12. I have never placed a call to a U.S. Xpress employee located in Tennessee.

13. I have never spoken on the phone with a U.S. Xpress employee located in Tennessee.

14. I have never contacted, attempted to contact, or been in contact with U.S. Xpress regarding the Plaintiff.

15. To my knowledge, I have never contacted a Tennessee location of Enterprise Rent-A-Car, or even spoken on the phone with an Enterprise Rent-A-Car employee located in Tennessee.

16. I have not been in Tennessee in over 20 years.

17. I do not personally transact any business in Tennessee.

Mr. Riebsame filed a notarized document entitled "Amended First Counter Affidavit" on August 10, 2018, in which he states:

Line 4 in the Complaint clearly states the Defendant Brad Schemel told me personally on the Phone he called Enterprise and reported the car stolen (see attached email from Defendant to me), and US Express of Chattanooga, Tennessee and told them the same. Line 4 also lists the name and phone number of a US Express employee to collaborate [sic] this in future Discovery.

---

[4] We need not set forth the statements from Mr. Schemel's affidavit pertaining to the issue of the sufficiency of service. Although the trial court found that service was not sufficient, it did not dismiss the case for that reason because Mr. Riebsame had time to reissue the summons.

I swear and affirm the above facts to [be] true and correct.

John J. Riebsame

On September 7, 2018, the trial court granted Mr. Schemel's motion to dismiss on the ground of lack of personal jurisdiction. In summarizing Mr. Riebsame's allegations, the court stated that, "[a]s a result of the Defendant's phone call, the Plaintiff lost a good job and a $15,000.00 signing bonus." There was no allegation in Mr. Riebsame's complaint that Mr. Schemel was ever in the state of Tennessee. The only alleged connection between Tennessee and Mr. Schemel was that he called U.S. Xpress, which is headquartered in Tennessee. The trial court reasoned that, "[e]ven if the Defendant made the call and made the untrue statements as alleged by the Plaintiff, the statements were made in North Dakota." The court determined that there was no allegation that would confer personal jurisdiction under Tennessee's long-arm statutes.

Mr. Riebsame appeals and raises the following issues: (1) whether the issue of proper service of process has been waived; (2) whether the trial court should order Enterprise Rent-A-Car to provide Mr. Riebsame with discovery documents; (3) whether the damage done in Tennessee constitutes contact with Tennessee; and (4) whether the trial court erred in dismissing the case. Mr. Schemel raises the additional issues of (1) whether Mr. Riebsame waived all arguments because his appellate brief does not comply with Rule 27 of the Tennessee Rules of Appellate Procedure, and (2) whether this is a frivolous appeal under Tenn. Code Ann. § 27-1-122.

ANALYSIS

Before addressing Mr. Riebsame's arguments, we note that he is a pro se litigant, both at trial and on appeal. This court has applied the following standards when evaluating the claims of pro se litigants:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). We allow pro se litigants some latitude in preparing their briefs and endeavor to "give effect to the

substance, rather than the form or terminology," of their court filings. *Young*, 130 S.W.3d at 63.

I.  Tennessee Rule of Appellate Procedure 27.

We first address Mr. Schemel's argument that Mr. Riebsame waived making any argument on appeal because his appellate brief fails to satisfy the requirements of Tenn. R. App. P. 27(a),[5] as well as Tenn. R. Ct. App. 6.[6]  As Mr. Schemel points out, Mr.

---

[5] Tennessee Rule of Appellate Procedure 27(a) provides as follows:

The brief of the appellant shall contain under appropriate headings and in the order here indicated:
(1) A table of contents, with references to the pages in the brief;
(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
(4) A statement of the issues presented for review;
(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
(7) An argument, which may be preceded by a summary of argument, setting forth:
  (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
  (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
(8) A short conclusion, stating the precise relief sought.

[6] Tennessee Court of Appeals Rule 6 provides, in pertinent part:

(a) Written argument in regard to each issue on appeal shall contain:
(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.
(b) No complaint of or reliance upon action by the trial court will be considered on appeal

Riebsame's brief does not contain a table of contents, table of authorities, statement of the case, statement of the facts, or prayer for relief as required by Tenn. R. App. P. 27(a) and Tenn. R. Ct. App. 6. Moreover, Mr. Riebsame does not provide an explanation as to how the trial court erred, as required by Tenn. R. App. P. 27(a)(7), or citations to the record, as required by Tenn. R. App. P. 27(a) and Tenn. R. Ct. App. 6.

When a party fails to comply with Tenn. R. App. P. 27, this court has the authority to dismiss the appeal. *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000); *see also Watt v. Watt*, No. M2014-02565-COA-R3-CV, 2016 WL 1730659, at *4 (Tenn. Ct. App. Apr. 27, 2016). The overriding intent of the Tennessee Rules of Appellate Procedure, however, is to allow cases to be resolved on their merits. TENN. R. APP. P. 1; *Johnson v. Hardin*, 926 S.W.2d 236, 238 (Tenn.1996). Pursuant to Tenn. R. App. P. 2,[7] this court has wide discretion to waive or suspend the rules in furtherance of that intent. *See Cantrell v. Cantrell*, No. M2009-00106-COA-R3-CV, 2010 WL 1644988, at *3 (Tenn. Ct. App. Apr. 23, 2010).

With respect to the issue of personal jurisdiction, we exercise our discretion to waive Tenn. R. App. P. 27 (and Tenn. R. Ct. App. 6) in this case, particularly in light of Mr. Riebsame's pro se status, the abbreviated record, and the clarity of the issue presented. For the reasons set forth below, the remaining issues are waived.

II. Personal jurisdiction.

The determinative issue in this appeal is whether the trial court properly concluded that it lacked personal jurisdiction over Mr. Schemel.

The burden of proof is on the plaintiff to show, "by a preponderance of the evidence, that Tennessee courts may properly exercise jurisdiction over [the defendant]." *Sumatra*, 403 S.W.3d at 739. Tennessee's long-arm statute, particularly Tenn. Code Ann. § 20-2-214(a)(6), allows Tennessee courts to exercise in personam jurisdiction on any basis not inconsistent with the state or federal constitutions. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Due process principles require that "an out-of-state defendant can be subject to personal jurisdiction only if he has such minimum contacts

---

unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

[7] Tennessee Rule of Appellate Procedure 2 provides, in pertinent part: "For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case . . . ."

with the forum state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 53. Our courts recognize both general and specific jurisdiction.[8] The issue here is whether Mr. Schemel had sufficient contacts to establish specific jurisdiction.

Specific jurisdiction arises "when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts." *Sumatra*, 403 S.W.3d at 744. Our courts apply a two-step test to determine whether a forum state may exercise specific personal jurisdiction over a nonresident defendant: (1) Are there sufficient minimum contacts with the forum state? (2) Is the exercise of jurisdiction fair? *First Cmty. Bank*, 489 S.W.3d at 388.

Tennessee law requires that "the factual allegations in the plaintiff's complaint must establish sufficient contacts between the defendant and this state with reasonable particularity." *Id.* at 383. For a nonresident defendant's contacts to be sufficient to support specific jurisdiction, the "contacts must arise out of the defendant's own purposeful, deliberate actions directed toward the forum state." *Id.* at 389 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). The "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475). In addition, the defendant's connection with the forum state must be "'substantial' enough to give rise to jurisdiction." *First Cmty. Bank*, 489 S.W.3d at 389 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In determining whether the contacts are sufficiently substantial, "we must consider 'the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts.'" *Id.* (quoting *Sumatra*, 403 S.W.3d at 759-60). Moreover, "we must look 'to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* at 390 (quoting *Walden*, 571 U.S. at 285).

In the present case, there is no allegation in the complaint that Mr. Schemel was ever in Tennessee or that he regularly conducted business in Tennessee. The only possible basis upon which to find specific personal jurisdiction is Mr. Riebsame's allegation that Mr. Schemel telephoned U.S. Xpress, a corporation headquartered in Tennessee. In his affidavit, Mr. Schemel denies making a telephone call to U.S. Xpress.

---

[8] Determining whether a nonresident corporation is subject to general personal jurisdiction in Tennessee depends upon whether the defendant "has continuous and systematic contacts with Tennessee so substantial as to render the corporation 'essentially at home' here in such a way which does not offend traditional notions of fair play and substantial justice." *First Cmty. Bank*, 489 S.W.3d at 385 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Mr. Riebsame does not make an argument under a general jurisdiction theory and there is nothing in the record to suggest that Mr. Schemel had continuous and systematic contacts with the state of Tennessee.

As Mr. Schemel points out in his brief, Mr. Riebsame's response to Mr. Schemel's affidavit relies solely upon the allegations of the complaint. To carry his burden of proof, Mr. Riebsame may not merely rest on his pleadings in response to Mr. Schemel's affidavit, "but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). Moreover, Mr. Riebsame's responsive "affidavit"[9] relies upon hearsay, was not made under oath, and does not satisfy the requirements of an unsworn declaration under Tenn. R. Civ. P. 72.[10] *See Perry v. Campbell*, No. M1998-00943-COA-R3-CV, 2001 WL 46988, at *4 (Tenn. Ct. App. Jan. 22, 2001) (stating that document does not qualify as an affidavit unless it is attested to).

As previously stated, Mr. Riebsame's complaint must establish minimum contacts between Mr. Schemel and this state with "reasonable particularity." *First Cmty. Bank*, 489 S.W.3d at 383. Even if we ignore the deficiencies in Mr. Riebsame's affidavit, we find the language of the complaint to be problematic. In the pertinent section of the complaint, Mr. Riebsame states that Mr. Schemel "told me he called my future employer U.S. Express of Chattanooga Tennessee and told them I stole his rental car." This language does not specify that Mr. Schemel called a U.S. Xpress representative *in* Tennessee or that he talked to a representative *in* Tennessee. When Mr. Schemel called U.S. Xpress, he may have spoken to a representative in some other state, or even in some other country.

Furthermore, even if we construe the pleadings to establish that Mr. Schemel spoke with a U.S. Xpress representative in Tennessee, these facts would be insufficient to support personal jurisdiction. There are no facts to establish that Mr. Schemel purposely directed his commercial activity toward the state of Tennessee. Mr. Schemel's contact with the state of Tennessee would have occurred because of the decision of U.S. Xpress to have its headquarters here, not because of Mr. Schemel's desire to further his business interests in the state. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). Mr. Riebsame has failed to show that Mr. Schemel purposefully availed himself of the benefits of doing business in Tennessee, thereby invoking the benefits and protections of its laws. *See First Cmty. Bank*, 489 S.W.3d at 389 (citing *Asahi*, 480 U.S. at 109).

---

[9] Black's Law Dictionary defines an affidavit as "[a] voluntary declaration of facts written down and sworn to by a declarant, usually before an officer authorized to administer oaths." BLACK'S LAW DICTIONARY (11th ed. 2019).

[10] Tennessee Rule of Civil Procedure 72 provides:

> Whenever these rules require or permit an affidavit or sworn declaration, an unsworn declaration made under penalty of perjury may be filed in lieu of an affidavit or sworn declaration. Such declaration must be signed and dated by the declarant and must state in substantially the following form: "I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct."

Rather, Mr. Schemel made a single phone call to a trucking company that happened to have its main offices in Tennessee.

We find illuminating the analysis of the Court of Appeals in the recent case of *EnhanceWorks, Inc. v. Dropbox, Inc.*, No. M2018-01227-COA-R3-CV, 2019 WL 1220903 (Tenn. Ct. App. Mar. 14, 2019). EnhanceWorks, a company with its headquarters in Nashville, brought suit against Dropbox, a Delaware company with its principal place of business in California, alleging that Dropbox had illegally copied and appropriated Expo, an application ("app") developed by EnhanceWorks. *Dropbox*, 2019 WL 1220903, at *1-2. The trial court granted Dropbox's motion to dismiss for lack of personal jurisdiction. *Id.* at *2. In affirming the court below, the appellate court examined several alleged bases for specific jurisdiction, including an email and a phone call. *Id.* at *4. Charlie Corts, the developer of Expo, emailed Robert Mylod, Jr., a member of the Dropbox board of directors, and requested a telephone call with him. *Id.* Mr. Mylod sent a reply email stating that he was available for a call late the following morning. *Id.* When Mr. Corts called at the appointed time, Mr. Mylod did not answer, but Mr. Mylod called Mr. Corts back the same day. *Id.* According to EnhanceWorks, Mr. Mylod stated, during the call, "that Expo had a 'cool UI [user interface]' but 'no practical value for Dropbox.'" *Id.* EnhanceWorks further asserted that "Mr. Mylod discouraged Mr. Corts from continuing to develop Expo." *Id.*

The court in *EnhanceWorks* went through a detailed analysis of these two contacts—a returned email and a returned phone call. *Id.* at *5. After noting that both communications were in response to Mr. Corts's initial contact, the court examined the connection between the contacts and the alleged causes of action. *Id.* The court concluded that "EnhanceWorks failed to allege specific facts from which to conclude or infer that Mr. Mylod knew he was emailing Mr. Corts in Tennessee." *Id.* The court further explained:

> "For a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum." [*Walden*, 571 U.S.] at 284. Here, Mr. Mylod's conduct, and therefore Dropbox's conduct, did not create a substantial connection with Tennessee. To the contrary, Mr. Mylod's two contacts were with Mr. Corts who happened to live in Tennessee. In determining whether minimum contacts exist, we analyze "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Furthermore, Mr. Mylod did not make the initial connection with Mr. Corts or with EnhanceWorks. Only after Mr. Francis first communicated with Mr. Corts and Mr. Mylod, and Mr. Corts communicated with Mr. Mylod did Mr. Mylod return communication. Mr. Mylod was simply responding to the initial contacts. Mr. Mylod never targeted Tennessee. *See NV Sumatra*, 403 S.W.3d at 759-60. Even though Mr. Mylod, on behalf of

Dropbox, sent one email and made one return telephone call to Mr. Corts in Tennessee, for the reasons discussed above, the quality and nature of these contacts fall short of the requirements of due process. EnhanceWorks has failed to allege facts sufficient to demonstrate that this was more than a single isolated call where Mr. Mylod and Dropbox were unaware that they were dealing with Tennessee. *Cf. Sledge v. Indico System Resources, Inc.*, 68 F. Supp. 3d 834, 845 (W.D. Tenn. 2014) (finding that the defendant knowingly made numerous communications into Tennessee for his own gains, thereby availing himself of the forum). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *First Cmty. Bank, N.A.*, 489 S.W.3d at 393-94 (citing *Walden*, 571 U.S. at 284-85 (quoting *Burger King*, 471 U.S. at 475)). Mr. Mylod's reply email and telephone call to Mr. Corts are the "random, fortuitous, or attenuated" contacts the Supreme Court warned against in *Burger King. See Burger King*, 471 U.S. at 475. We agree with the trial court that Mr. Mylod's email and telephone communications with Mr. Corts did not purposefully target Tennessee such that Dropbox should reasonably anticipate being haled into court here. *NV Sumatra*, 403 S.W.3d at 759-60. Therefore, EnhanceWorks has not established that Mr. Mylod/Dropbox's reply email and telephone call constitute sufficient minimum contacts with Tennessee. *Id.*

*Id.* at *6.

We find that several of the principles applied by the court in *EnhanceWorks* also apply here. Mr. Riebsame asserts that Mr. Schemel made one phone call to U.S. Xpress. There is no allegation that Mr. Schemel knew that he was speaking to someone in Tennessee. Even if he did, however, one phone call to an unknown person in Tennessee under the circumstances set forth by Mr. Riebsame does not rise to the level of purposefully directing commercial activity toward the state of Tennessee and invoking the benefits of its laws. Rather, such activity constitutes the type of random contact that would not make one anticipate being haled into court based on that conduct.

Having concluded that Mr. Schemel lacked minimum contacts with the state of Tennessee, we need not proceed to the second prong of the analysis, whether the exercise of jurisdiction is fair.

III. Service of process.

Mr. Riebsame poses the following issue: "Since Defense argued service and jurisdiction and the court ruled is the issue of service [waived] and has the court accepted jurisdiction?" Mr. Riebsame provides no argument or citation of authority in support of

this issue. As our Supreme Court has stated, "It is not the role of the courts . . . to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). We consider this issue waived.

IV. Discovery.

Mr. Riebsame also presents the following issue: "Can I have my discovery from Enterprise Car rental?" Again, he provides no argument or citation of authority in support of this issue. Moreover, there is nothing in the record indicating that this issue was raised in the trial court. We consider this issue waived.

We decline to find Mr. Riebsame's appeal frivolous under Tenn. Code Ann. § 27-1-122.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, John J. Riebsame, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE