**MAGNA POWERTRAIN DE MEXICO S.A. DE C.V., Plaintiff,**

v.

**MOMENTIVE PERFORMANCE MATERIALS USA LLC, Defendant.**

**Case Number 16-11249**

United States District Court, E.D. Michigan, Southern Division.

Signed June 16, 2016

---

John Joseph Rolecki, Mark A. Stern, Honigman Miller Schwartz and Cohn LLP, Detroit, MI, for Plaintiff.

Frank Leone, Jr., Gregory S. Chernack, Hollingsworth LLP, Washington, DC, Jeena S. Patel, Michael G. Brady, Warner, Norcross, Southfield, MI, for Defendant.

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR TRANSFER, AND TRANSFERRING CASE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

DAVID M. LAWSON, United States District Judge

The question presented by the defendant's motion to dismiss is whether the Court has personal jurisdiction over a limited liability company registered in Delaware and headquartered in New York, in a lawsuit brought by a Mexican subsidiary of an American corporation, alleging that the defendant breached a warranty by supplying a defective product manufactured in New York and furnished to the plaintiff at its plant in Mexico. Plaintiff Magna Powertrain de Mexico argues that defendant Momentive Performance Material USA, LLC consented to general personal jurisdiction by registering to do business in Michigan and appointing an agent to receive process. But Michigan law does not support the idea that mere registration to do business in the state confers general personal jurisdiction over a limited liability company. The plaintiff also contends that the Court has specific jurisdiction because the defendant purposely availed itself of the privilege of doing business here, and the other requirements have been met. However, the plaintiff's cause of action is not at all related to any of the defendant's conduct in Michigan. Therefore, the Court will grant the motion to dismiss in part and transfer the case to the federal court in the Northern District of New York, where the defendant's headquarters in located.

### I.

The product in question is a silicon sealant that Magna uses in the assembly of transfer cases at its factory in Mexico. A transfer case is a component in the drive train of certain four- and all-drive wheel vehicles. Magna supplies those components to Fiat Chrysler, an automotive manufacturer. In January 2014, Momentive shipped 12 drums of sealant manufactured at its New York plant to Magna's manufacturing facility in Mexico. After Magna used eight of the drums, it discovered that the sealant would not cure properly. Testing of what was left of that batch revealed that the sealant was defective.

According to the complaint and removal notice, plaintiff Magna is a Mexican corporation with its headquarters in Ramos Arizpe, Coahuila, Mexico. It is part of the overall Magna Powertrain Group, which is owned by Magna International, Inc. The head office for Magna Powertrain is in Troy, Michigan.

Defendant Momentive Performance Materials USA, LLC is a limited liability company organized under Delaware law. It is wholly owned by Momentive Performance Materials, Inc., a corporation organized in Delaware, with its principal place of business in New York. Defendant Magna has registered and is qualified to conduct business in Michigan and 22 other states, and has business operations throughout the world. The defendant says that it manufactures the sealant only at its Waterford,

New York plant. It maintains that it only has four employees in Michigan, it does not lease any facilities in Michigan, it does not have any bank accounts in Michigan, and it does not engage in any advertising efforts tailored specifically to Michigan residents or entities. The defendant also asserts, without contradiction by the plaintiff, that in 2015, its product sales in Michigan constituted 3.4% of its total sales in the United States and 1.0% of its total sales worldwide.

The plaintiff alleges that after the curing problem with the sealant was discovered, one of the defendant's employees attended at least one meeting about the defective sealant with Magna Powertrain Group personnel in Michigan on October 8, 2014. The plaintiff asserts that there were numerous and ongoing discussions among personnel from Magna Powertrain Group, the defendant, and Fiat Chrysler relating to the problem sealant. Those discussions included conference calls among groups of Magna Powertrain Group personnel and the defendant's personnel, and calls among representatives of all three companies. All of the Magna Powertrain Group employees are located in its Troy, Michigan office, and they were in Michigan when they communicated with the defendant and Fiat Chrysler. In addition, Magna Powertrain Group's Michigan employees made trips to the defendant's offices as part of the defendant's investigation and testing of the defective sealant. Arrangements for the trips were made between Magna Powertrain Group personnel in Michigan and the defendant's personnel.

The plaintiff also alleges that several Fiat Chrysler employees based at the Chrysler Technical Center in Michigan were involved in discussions about the sealant problem. The plaintiff points out that the report analyzing the faulty sealant was provided to Magna Powertrain in Michigan, and that tests on the transfer cases were conducted in Troy, Michigan. The plaintiff delivered the transfer cases with defective sealant to Fiat Chrysler's Jefferson Avenue assembly plant.

## II.

When personal jurisdiction is challenged in a motion filed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168 (6th Cir.1988); *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974)). When the motion is supported by properly documented factual assertions, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Ibid.* The Court may opt to decide the motion based only on the affidavits, allow discovery of the jurisdictional facts, or, if factual disputes need resolving, hold an evidentiary hearing. *Ibid.* If a factual contest requires resort to the third option the plaintiff must satisfy the preponderance of evidence standard of proof. Otherwise, the plaintiff need only present a *prima facie* case for personal jurisdiction, and the Court views the submissions in the light most favorable to the plaintiff. *Id.* at 1458–59.

In a case where subject matter jurisdiction is based on diversity of citizenship, federal courts look to state law to determine personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1); *Miller v. AXA Winterthur Ins. Co.,* 694 F.3d 675, 678 (6th Cir. 2012). If a Michigan court would have jurisdiction over a defendant, so would a federal district court sitting in this state.

*Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014) (explaining that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons").

Michigan law recognizes two bases for personal jurisdiction over corporations: general, Mich. Comp. Laws § 600.711, and specific (called "limited personal jurisdiction" in state law parlance), Mich. Comp. Laws §. 600.715. There is no Michigan statute that addresses personal jurisdiction over limited liability companies, such as the defendant in this case. However, the personal jurisdiction rules governing corporations generally have been applied to limited liability companies as well. *See Finn v. Great Plains Lending, LLC,* 2016 WL 705242, at *3 n. 3 (E.D.Pa. Feb. 23, 2016) (citing *Daimler,* 134 S.Ct. at 761–62, and noting that the Daimler subsidiary involved in that case itself was a limited liability company).

■ Michigan's so-called Long Arm Statute defines the scope of its limited personal jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore,* —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). Michigan interprets its Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992).

## A.

■ General jurisdiction would allow a plaintiff to sue a defendant "on any and all claims against it, wherever in the world the claims may arise." *Daimler,* 134 S.Ct. at 751. General jurisdiction exists if a defendant's contacts with a State "are so 'continuous and systematic' as to render them essentially at home in the forum

State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The plaintiff advances no argument that defendant Momentive is "at home" in Michigan. Instead, Magna argues that Momentive consented to general jurisdiction in Michigan by registering to do business and appointing a resident agent, who was served with process here. Michigan law, however, does not sustain that position.

Although in *Daimler* the Supreme Court held that corporations (and by extension, limited liability companies) are "at home" only in their place of incorporation or principal place of business, *Daimler,* 134 S.Ct. at 760, some courts post-*Daimler* have found that foreign companies have consented to general jurisdiction in a forum state where they are licensed to do business under a state statute and have designated an agent to receive service of process. In *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.,* the district court concluded that the foreign corporation had consented to general jurisdiction in Delaware by complying with Delaware's business registration statute, in part because the Delaware Supreme Court had found that registration under the relevant statute implied consent to general jurisdiction. 78 F.Supp.3d 572, 587–88 (D.Del.2015) (citing *Sternberg v. O'Neil,* 550 A.2d 1105, 1107 (Del.1988)), *aff'd,* 817 F.3d 755 (Fed. Cir.2016). However, as the defendant here noted, *Sternberg* was overturned recently by the Delaware Supreme Court, which found that *Daimler* rendered *Sternberg*'s interpretation of the Delaware business registration statute untenable. *Genuine Parts Co. v. Cepec,* No. 528, 2015, 137 A.3d 123, 2016 WL 1569077, at *1 (Del. Apr. 18, 2016). At least one other court has found that compliance with a state business reg-

istration statute constituted consent to general jurisdiction in the state. *See Senju Pharm. Co. v. Metrics, Inc.*, 96 F.Supp.3d 428, 439–40 (D.N.J.2015); *but see Display Works, LLC v. Bartley*, No. CV 16–583, 182 F.Supp.3d 166, 2016 WL 1644451, at *7 (D.N.J. Apr. 25, 2016) (holding the opposite).

But in *Brown v. Lockheed Martin Corp.*, the Second Circuit found it "prudent—in the absence of a controlling interpretation by the Connecticut Supreme Court, or a clearer legislative mandate than Connecticut law now provides—to decline to construe the state's registration and agent-appointment statutes as embodying actual consent by every registered corporation to the state's exercise of general jurisdiction over it." 814 F.3d 619, 626 (2d Cir.2016). The *Brown* defendant registered to do business in Connecticut and appointed an agent for service of process, and its agent was served with process in the suit in Connecticut. *Id.* at 630. The Second Circuit observed that "business registration statutes such as Connecticut's were enacted primarily to allow states to exercise jurisdiction over corporations that, although not formed under its laws, were transacting business within a state's borders and thus potentially giving rise to state citizens' claims against them." That statement describes specific jurisdiction. *Id.* at 632.

The plaintiff makes two arguments—asserted for the first time during oral argument—that, it believes, support the notion that compliance with the Michigan registration statute implies consent to general personal jurisdiction. The first relies on *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir.1991), cited in *Display Works, LLC v. Bartley*, 182 F.Supp.3d 166, 2016 WL 1644451 (D.N.J. Apr. 25, 2016), a case that does not favor the plaintiff's position. The *Bane* court found that the Pennsylvania registration statute inferred consent for general personal jurisdiction. The plaintiff

asserts that Pennsylvania's general jurisdiction statute "matches almost word for word to the general jurisdiction statute in the State of Michigan for limited liability companies." Tr. Mot. Arg. at 13 (June 7, 2016). As noted earlier, there is no Michigan general personal jurisdiction statute for limited liability companies. And the plaintiff ignores a critical difference between Michigan's general jurisdiction statute for corporations and Pennsylvania's. The Pennsylvania statute states that the following "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over ... [c]orporations: [i]ncorporation under *or qualification as a foreign corporation under the laws of this Commonwealth.*" 42 Pa. Stat. and Cons. Stat. § 5301(a)(2) (emphasis added). The Michigan statute does not contain the italicized language. *See* Mich. Comp. Laws § 600.711 (limiting the "relationships" that establish general jurisdiction to "[i]ncorporation under the laws of this state"; "[c]onsent ...."; and "[t]he carrying on of a continuous and systematic part of its general business within the state").

The plaintiff's second argument focuses on a Michigan statute that catalogs activities that foreign limited liability companies can perform in Michigan without registering. *See* Mich. Comp. Laws § 450.5008(1). The list is long, although it "does not apply in determining the contacts or activities that may subject a foreign limited liability company to service of process." *Id.* at 5009(2). But the plaintiff argues that the defendant's registration, coupled with the statute that says that "[a] foreign limited liability company holding a valid certificate of authority in this state has no greater rights or privileges than a domestic limited liability company," Mich. Comp. Laws§ 450.5003(3), justifies the inference that the defendant's registration and ap-

pointment of an agent for process service constituted its consent to the jurisdiction of Michigan courts. But the Michigan Supreme Court does not view the registration statute that way. Addressing an earlier version of the statute, the court stated that

provisions of the [business registration] statutes relating to the instant controversy may not be construed as conferring jurisdiction on the courts of this State with reference to causes of action not arising in Michigan, the parties to which are non-residents of the State. The admission of defendant to carry on business in this State, evidenced by the certificate of authority granted to it, gave to it the status of a domestic corporation engaged in the same business, but did not extend its liability to be sued in a Michigan court to a transitory cause of action arising elsewhere, the plaintiff being a non-resident.

*Renfroe v. Nichols Wire & Aluminum Co.,* 348 Mich. 425, 433, 83 N.W.2d 590, 594 (1957).

Because the Michigan courts have rejected the idea that the registration statutes allow an inference of consent to general personal jurisdiction, this Court declines the plaintiff's invitation to draw that inference. The defendant did not consent to general jurisdiction in Michigan by registering to do business in this state and appointing an agent to receive service of process.

## B.

" 'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e., an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')." *Walden,* 134 S.Ct. at 1122 n. 6 (quoting *Goodyear,* 564 U.S. at 919, 131 S.Ct. 2846). The Sixth Circuit historically has applied three criteria to guide the minimum contacts analysis, which it enunciated in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968):

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine,* 401 F.3d at 381.

■ Assuming for a moment that the plaintiff can establish the defendant's purposeful availment (by, for instance, registering to do business, selling product, and maintaining employees in Michigan), it is difficult to see how this defective product case arose from Momentive's activity in Michigan. After all, it is undisputed that Momentive manufactured the sealant at its plant in northern New York and shipped it to the plaintiff at its factory in Mexico. Where is the connection to Michigan?

■ The "arising from" element is not satisfied unless "the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 723 (6th Cir. 2000). The plaintiff argues that *after* the defect in the sealant was discovered, the defendant had regular and ongoing contacts with Michigan related to the alleged defect. The plaintiff asserts that at least one of the defendant's representatives attended a meeting with the plaintiff in Michigan. And it argues that its personnel communicated with the defendant from Michigan, even though the defendant's personnel were elsewhere. But as the defendant points out, all of its contacts in Michigan were with Magna Powertrain Group, not Magna Powertrain de Mexico.

And all those contacts occurred after the defective sealant was manufactured, shipped to the plaintiff, and used in building the transfer cases. The plaintiff has not explained how "the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir.2003). The Sixth Circuit has emphasized that "[i]t is not enough that there be some connection between the in-state activity and the cause of action—that connection must be *substantial.*" *Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469, 472–73 (6th Cir.2012). "The defendant's contacts with the forum state must relate to the operative facts and nature of the controversy." *Ibid.* The plaintiff has failed to show that the defendant's contacts in Michigan are substantial as they relate to the controversy: supplying a defective product to a Mexican factory.

The plaintiff points out that its parent corporation in Michigan, even though not the plaintiff in this case, was directing the Mexican subsidiary in reacting to the discovery of the defective sealant, and therefore the actions that occurred in Michigan are relevant to the jurisdictional analysis. The plaintiff concedes that the activities of a subsidiary cannot be used to establish jurisdiction over the parent corporation, but it insists that the reverse is not true. But that argument is beside the point.

The plaintiff's claims did not *arise* from contacts that occurred after the actual harm. "An action arises out of contacts with the forum if, 'but for' those contacts, the cause would not have arisen." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir.1990). As noted earlier, the defective sealant was manufactured in New York, and the sealant was used to make transfer cases in Mexico. The subsequent investigation into the cause of the defect did not cause the harm in this case. Therefore, the plaintiff

has not shown that its claims arise from the defendant's contacts with Michigan.

There is no basis for the Court to exercise specific jurisdiction over the defendant in this case.

### C.

■ Generally the Court is required to dismiss any case filed in the wrong jurisdiction, but it has discretion to "transfer such [a] case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Transfer is appropriate under section 1406(a) where "a case [is filed] laying venue in the wrong division or district." In this Circuit, section "1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either improper venue or lack of personal jurisdiction." *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980).

■ The defendant acknowledges that it is "at home" in the Northern District of New York and that it may be sued there. The claims raised in the lawsuit are serious and require adjudication. The defendant has not offered any good reason why the plaintiff should be put to the expense of refiling its case in a new district, or why the facts favor dismissal over transfer. The interests of justice, and the command to apply the rules of procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, point to the conclusion that transferring this case to a court in a district that can exercise personal jurisdiction over the defendant is the preferred remedy.

### III.

The plaintiff has not persuaded the Court that it has personal jurisdiction over

the defendant to adjudicate the claims raised in the complaint. However, dismissal of the case is not an appropriate remedy, when transfer to another district will solve the problem raised by the motion to dismiss.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. # 11] is **GRANTED IN PART.**

It is further **ORDERED** that the Clerk of Court shall **TRANSFER** the case to the United States District Court for the Northern District of New York.