# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANTONIO EMILIO HUPAN, *et al.*,       )
                                        )
        Plaintiffs,              )
                                        )
v.                                      )       C.A. No. N12C-02-171 VLM
                                        )
ALLIANCE ONE INTERNATIONAL              )
INC., PHILIP MORRIS USA INC., and       )
PHILIP MORRIS GLOBAL BRANDS             )
INC., *et al.*,                         )
                                        )
        Defendants.             )

## MEMORANDUM OPINION AND ORDER

Submitted: May 10, 2016
Decided: August 25, 2016

*Upon Consideration of Plaintiffs' Motion for Clarification,*
*Or Alternatively Reargument,* **DENIED.**

Ian C. Bifferato, Esquire, Bifferato LLC, Wilmington, Delaware; Charles S. Siegel, Esquire, Waters Kraus & Paul, Dallas, Texas; and Steven J. Phillips, Esquire, Phillips & Paolicelli LLP, New York City, New York. *Attorneys the Plaintiffs.*

David J. Soldo, Esquire, and P. Clarkson Collins, Jr., Esquire, Morris James LLP, Wilmington, Delaware; Patrick W. Dennis, Esquire, and Perlette Michele Jura, Esquire, Gibson Dunn & Crutcher LLP, Los Angeles, California; Donald E. Reid, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware; and Elizabeth A. Coleman, Esquire, and Casey T. Grabenstein, Esquire, Jenner Block LLP, Chicago, Illinois. *Attorneys for Defendants, Philip Morris USA, Inc., and Philip Morris Global Brands, Inc.*

**MEDINILLA, J.**

## INTRODUCTION

This is one of six cases wherein 406 Argentine nationals made a collective strategic decision to file their respective toxic tort claims in Delaware for injuries that allegedly occurred 5,000 miles away.[1] As to this case, on November 30, 2015, this Court issued its Opinion and dismissed Defendants Philip Morris USA Inc. and Philip Morris Global Brands Inc. ("PM Defendants") under the doctrine of *forum non conveniens* ("FNC"). Plaintiffs, twenty-three of the Argentine nationals, move pursuant to Superior Court Civil Rule 59(e) for clarification or reargument of this ruling. After consideration of the parties' briefings and their respective oral arguments, Plaintiffs' Motion for Clarification, or Alternatively Reargument, as to the Court's November 30, 2015, *Forum Non Conveniens* Ruling, is **DENIED**.

## FACTUAL[2] AND PROCEDURAL HISTORY

Plaintiffs are a group of twenty-three Argentine tobacco farmers ("parent Plaintiffs") and their children ("children Plaintiffs"). This case arises out of birth defects suffered by the children Plaintiffs as a result of the parent Plaintiffs'

---

[1] The other pending matters are *Aranda v. Alliance One Int'l, Inc., et al.*, No. N13C–03–068 VLM; *Biglia v. Alliance One Int'l, Inc., et al.*, No. 14C–01–021 VLM; *Chalanuk v. Alliance One Int'l, Inc., et al.*, No. N12C–04–042 VLM; *Da Silva v. Alliance One Int'l, Inc., et al.*, No. N12C–10–236 VLM; and *Taborda v. Alliance One Int'l, Inc., et al.*, No. N13C–08–092 VLM. The parties have stayed these matters pending the outcome of this case.

[2] This decision does not reiterate the factual background since it was more fully discussed in this Court's previous Opinion. *See Hupan v. Alliance One Int'l, Inc.*, 2015 WL 7776659, at *1–*2 (Del. Super. Nov. 30, 2015).

1

alleged excessive use of and exposure to dangerous chemicals during the cultivation of tobacco in the Misiones Province of Argentina.

Plaintiffs filed their Complaint in this matter on February 14, 2012. The Court initially entertained extensive briefing from the parties concerning choice of law issues from February 2013 to August 2013.[3] The parties agreed to address the remaining choice of law disputes within their respective submissions on Defendants' motions to dismiss.[4] On April 29, 2014, PM Defendants each separately moved for dismissal under the principles of FNC and under Superior Court Civil Rules 12(b)(1) and 12(b)(6). Plaintiffs opposed PM Defendants' FNC motions to dismiss in a single brief filed on October 13, 2014, but filed separate briefs in opposition to PM Defendants' and Defendant Monsanto Company's various Rule 12(b) motions. PM Defendants separately replied on January 13, 2015.

On April 20, 2015, counsel for Defendant Philip Morris Global Brands Inc. filed a letter with the Court, purportedly on behalf of all Defendants, citing *Bell*

---

[3] After briefing, the parties generally agreed to the application of Argentine law as to all the issues, except as to the issues of Plaintiffs' negligence claims and punitive damages, which remained in dispute.

[4] On April 4, 2014, this Court entered an Order pursuant to a joint stipulation that the parties would submit briefs addressing issues under Rule 12 as well as *forum non conveniens* ("FNC"), and that a hearing would be held on September 4, 2014. By joint stipulation, the parties agreed to extend the deadlines for briefing, and a hearing was scheduled for May 4, 2015.

*Helicopter Textron, Inc. v. Arteaga*[5] in support of dismissal based on FNC. Oral arguments were heard on May 4, 2015. Following that hearing, this Court requested clarification as to whether Defendant Monsanto Company had also joined the FNC motions to dismiss.[6] After confirming that Defendant Monsanto Company did not seek dismissal on FNC grounds, this Court entertained further briefing on PM Defendants' FNC motions.

On November 30, 2015, this Court determined that PM Defendants had satisfied their burden under *General Foods Corp. v. Cryo-Maid, Inc.*,[7] by

---

[5] 113 A.3d 1045, 1050–52 (Del. 2015) (applying "most significant relationship" test to find laws of Mexico applied to action by Mexican plaintiffs on behalf of Mexican citizens who died in helicopter crash in Mexico and sued Delaware manufacturer of helicopter component part; "[w]hen plaintiffs choose not to sue in the place where they were injured or where they live, or even in the jurisdiction whose law they contend applies, but instead in a jurisdiction with no connection to the litigation, our trial courts should be extremely cautious not to intrude on the legitimate interests of other sovereign states.").

[6] Defendant Monsanto Company separately moved for dismissal under Superior Court Civil Rules 12(b)(6) and 9(b). This Court ultimately granted Defendant Monsanto Company's motion to dismiss under Rule 9(b) with leave to Plaintiffs to amend the Complaint to comply with the specificity requirements of notice pleading.

[7] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964). In *Taylor v. LSI Logic Corp.*, the Delaware Supreme Court provided the following summary of the *Cryo-Maid* factors:
> (1) the relative ease of access to proof;
> (2) the availability of compulsory process for witnesses;
> (3) the possibility of the view of the premises;
> (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;
> (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and
> (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.

689 A.2d 1196, 1198–99 (Del. 1997) (denying motion to dismiss on FNC grounds in action by Canadian shareholder of Canadian subsidiary challenging American parent corporation's plan to

demonstrating that they would suffer "overwhelming hardship" if forced to litigate the above-captioned matter in Delaware, and dismissed PM Defendants.[8]

On December 7, 2015, Plaintiffs timely filed the instant Motion for Clarification, or Alternatively Reargument, as to the Court's November 30, 2015, *Forum Non Conveniens* Ruling. On December 14, 2015, PM Defendants filed their joint opposition to the instant motion. This Court permitted both parties to submit further briefing: Plaintiffs filed a reply in support of their motion on January 25, 2016, and PM Defendants filed a joint sur-reply in opposition to Plaintiffs' motion on February 4, 2016. Plaintiffs also submitted a letter on January 22, 2016, providing additional authority in support of their position.[9]

On April 28, 2016, PM Defendants submitted publicly available materials related to the Delaware Supreme Court's decision in *Martinez v. E.I. DuPont de*

---

acquire public minority interest of Canadian subsidiary, where moving defendant failed to allege hardship it would face in Delaware with particularity and had not identified witnesses it planned to call at trial; trial court erred by merely finding Canada was a "more appropriate forum," where true test is "overwhelming hardship").

[8] Because the *forum non conveniens* issue was dispositive, the Court's previous Opinion did not address PM Defendants' respective arguments concerning dismissal under Rules 12(b)(1) and 12(b)(6). *Hupan*, 2015 WL 7776659, at *10. *See also supra* note 6 (discussing the resolution of Defendant Monsanto Company's separate motion to dismiss).

[9] In a somewhat complex procedural twist, Plaintiffs' complaint against Defendant Monsanto Company has been amended twice since PM Defendants were dismissed. Plaintiffs' First Amended Complaint was filed on January 29, 2016. On February 12, 2016, PM Defendants jointly moved to strike, or in the alternative dismiss, Plaintiffs' First Amended Complaint, arguing that it incorrectly included PM Defendants despite their dismissal on November 30, 2015. Plaintiffs were permitted to file a Second Amended Complaint, which they filed on February 23, 2016, removing PM Defendants from the captions and removing allegations and averments concerning PM Defendants; consequently, PM Defendants withdrew their Motion to Strike the First Amended Complaint on February 29, 2016.

4

*Nemours & Co.* ("*Martinez II*");[10] specifically, the appellate briefs submitted and excerpts from the transcript of the oral arguments made before the Supreme Court in that case.[11] Also on April 28, 2016, Defendant Philip Morris USA Inc. separately wrote to this Court noting the Delaware Supreme Court's recent decision in *Genuine Parts Co. v. Cepec*,[12] which abrogated *Sternberg v. O'Neil's*[13] broad interpretation of Delaware's corporate registration statutes and their effect on personal jurisdiction under Delaware law.[14] On May 5, 2016, Plaintiffs submitted a letter in response to PM Defendants' submission regarding *Martinez II* and *Genuine Parts*. Oral arguments were heard on May 10, 2016.

---

[10] 86 A.3d 1102 (Del. 2014), *as revised* (Mar. 4, 2014) [hereinafter *Martinez II*] (granting motion to dismiss on FNC grounds after finding defendant would suffer overwhelming hardship where foreign asbestos plaintiff was just one of thirty-two cases against defendant as parent company of Argentine subsidiary; Argentine plaintiff's alleged workplace injuries and treatment occurred in Argentina, case involved novel and unsettled issues of Argentine law, most or all of evidence was located in Argentina and only connection to Delaware was defendant's incorporation in Delaware).

[11] The cited portions of the transcript reference questions posed and comments made by Chief Justice Strine, who was Chancellor at the time and heard *Martinez II* while sitting by designation pursuant to Article IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

[12] 137 A.3d 123 (Del. 2016) (holding that foreign corporation's compliance with statutory requirements concerning registration of foreign corporation doing business in Delaware does not constitute implied consent to general jurisdiction over corporation in Delaware).

[13] *Sternberg v. O'Neil*, 550 A.2d 1105 (Del. 1988), *abrogated by Genuine Parts*, 137 A.3d 123, *as recognized by Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 2016 WL 3574652 (E.D. Mich. June 16, 2016).

[14] Defendant Philip Morris USA Inc. thus reserved this jurisdictional defense in the event that this Court decided to grant Plaintiffs' instant motion. Because this Court finds that Plaintiffs' motion under Rule 59(e) must be denied, this Memorandum Opinion and Order does not address whether Defendant Philip Morris USA Inc. would otherwise be subject to this Court's jurisdiction.

## CONTENTS OF THE PARTIES

For purposes of the instant motion, Plaintiffs do not seek reargument of this Court's underlying decision to grant PM Defendants motions to dismiss on the basis of FNC,[15] nor do they, at least for now, challenge this Court's previous finding that PM Defendants would suffer overwhelming hardship if forced to litigate this matter in Delaware.[16] However, Plaintiffs seek two distinct legal remedies in this Rule 59 motion.

First, Plaintiffs seek clarification[17] as to whether a Delaware court ruling on a FNC motion must first address, as a threshold matter, whether there is an "adequate alternate forum" with jurisdiction over the moving defendants and no statute of limitations bar before applying the *Cryo-Maid* factors. Notably, a threshold inquiry into the existence of an adequate alternate forum is the first part of the FNC analysis employed by federal courts.[18] Plaintiffs argue that this Court

---

[15] Pls.' Mot. Clarification, or Alternatively, Rearg. at 1; Oral Arg. Tr. at 9:11–13.

[16] Oral Arg. Tr. at 56:23–57:8. For purposes beyond resolution of their instant motion, Plaintiffs do, however, reserve future rights to contest this Court's previous ruling. *Id.* at 57:5–6.

[17] *See Bryant v. Way*, 2012 WL 4086167, at *5 (Del. Super. Sept. 14, 2012) ("In essence, Defendants are seeking to assert material fact disputes or oversights that should have been raised during the summary judgment stage. Such an attempt falls squarely under the purview of Superior Court Rule 59(e). ... Moreover, to the extent Defendants' motion seeks to clarify the Court's prior orders, such clarification is also most appropriately addressed under Rule 59(e)." (footnotes omitted)).

[18] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 254 & n.22 (1981) (articulating federal FNC standard and granting motion to dismiss in wrongful death action against American manufacturers in action arising out of plane crash in Scotland). *See also infra* notes 35, 39.

overlooked controlling precedent or legal principles, and/or misapprehended the law such as would change its underlying decision, by not addressing this "threshold requirement" before applying the *Cryo-Maid* factors and dismissing PM Defendants on FNC grounds.[19]

Second, Plaintiffs request that this Court impose four conditions on its FNC dismissal of PM Defendants. Specifically, Plaintiffs move this Court to (1) order PM Defendants to waive any and all defenses they may possess in Argentina relating to jurisdiction, statutes of limitations, or laches; (2) require PM Defendants to stipulate that they will satisfy any judgment rendered by an Argentine court; (3) afford Plaintiffs a reasonable period of time to conduct merits discovery in the United States as to PM Defendants in order to adequately present their claims in Argentina; and (4) allow Plaintiffs to reinstate their claims in this Court if Argentine courts refuse to entertain Plaintiffs' claims due to lack of jurisdiction, a statute of limitations bar, or any other unknown reason unrelated to the merits of Plaintiffs' claims.[20]

Naturally, PM Defendants oppose. They maintain that this Court conducted the proper FNC analysis in accordance Delaware precedent. PM Defendants

---

[19] Pls.' Mot. Clarification, or Alternatively, Rearg. at 1–2; Pls.' Reply Supp. Mot. at 1.

[20] During oral arguments, there was some discussion as to whether Plaintiffs were withdrawing their requested condition concerning the ability to reinstate their claims in this Court should the courts in Argentina refuse to hear this case for any non-merits based reason. *See* Oral Arg. Tr. at 29:5–31:21. Out of an abundance of caution, this Court addresses Plaintiff's request in this decision.

further argue that Plaintiffs improperly raise new arguments in the form of onerous conditions to their already-ordered FNC dismissal, which is not permissible under Rule 59(e). PM Defendants argue that the requested conditions additionally fail on the merits because the conditions are rooted in a federal FNC analysis that has not been adopted by the Delaware Supreme Court.

Having considered the respective briefing, supplemental submissions and oral arguments, the matter is ripe for review.

## STANDARD OF REVIEW

Pursuant to Superior Court Civil Rule 59(e), a motion for reargument permits the Court to reconsider "its findings of fact, conclusions of law, or judgment."[21] "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[22] To prevail on a motion for reargument, the movant must demonstrate that "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[23] Further, "[a] motion for

---

[21] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969). *See also Bd. of Managers of the Delaware Criminal Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003), *aff'd in part sub nom. Gannett Co. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232 (Del. 2003); *Cummings v. Jimmy's Grille*, 2000 WL 1211167, at *2 (Del. Super. Aug. 9, 2000).

[22] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Apr. 27, 2007).

[23] *Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 2003 WL 1579170, at *1.

reargument is not a device for raising new arguments,"[24] nor is it "intended to rehash the arguments already decided by the court."[25] The moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[26]

## ANALYSIS

### 1. Plaintiffs' Arguments Were Already Considered by This Court and Otherwise Fail on the Merits

*Forum non conveniens* is a common law, judicially created doctrine; it allows courts to exert some control over a foreign plaintiff's access to a forum in the United States.[27] Jurisdictions are free to employ the doctrine or disregard it, and if they choose to employ it, they are further free to adopt the federal "adequate alternate forum" standard or create their own.[28] Plaintiffs assert that Delaware's FNC jurisprudence includes this federal FNC consideration, which this Court overlooked or otherwise misapprehended.

---

[24] *Id.*

[25] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[26] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995) *on reconsideration*, 1996 WL 769627 (Del. Super. Dec. 24, 1996). *See also Brenner v. Vill. Green, Inc.*, 2000 WL 972649, at *1 (Del. Super. May 23, 2000), *aff'd*, 763 A.2d 90 (Del. 2000).

[27] *See Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 840 (Del. 1999) ("State courts traditionally have formed their own FNC laws. Absent federal statutory law preempting state FNC standards, many states have deviated from the standard set in *Piper Aircraft*, which tends significantly to disfavor foreign plaintiffs." (footnote omitted)).

[28] *Id.*

9

Plaintiffs argue that the Delaware Supreme Court explicitly followed the federal FNC standard, and rely on *Ison v. E.I. DuPont de Nemours and Co.* in support of their position.[29] Plaintiffs, however, concede that aside from their read of *Ison*, no other Delaware Supreme Court case mentions a supposed requirement of an "adequate alternate forum" wherein a moving defendant is amenable to suit.[30] Plaintiffs instead argue that the threshold requirement is "so basic, is so ingrained in the federal jurisprudence, in the jurisprudence of every other state and in Delaware jurisprudence simply by virtue of having been taken for granted."[31] They argue that although our Supreme Court has not expressly mandated this

---

[29] 729 A.2d 832.

[30] Plaintiffs also rely on non-Supreme Court cases from this jurisdiction as support for their position. *See Abrahamsen v. ConocoPhillips Co.*, 2014 WL 2884870 (Del. Super. May 30, 2014) (granting motion to dismiss on FNC grounds after finding defendants would suffer overwhelming hardship, where cases involved 123 Norwegian plaintiffs alleging workplace injuries and treatment occurring in Norway, most or all of evidence was located in Norway, there were no means to obtain compulsory process for unwilling witnesses residing in Norway and case was complicated by fact that Norway was civil law jurisdiction without readily available precedent); *Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869 (Del. Ch. Dec. 17, 2015) (denying motion to dismiss on FNC grounds where computer application developed in India by employees of corporation headquartered and incorporated in India was stolen in India but subsequently placed in possession of defendant, a Delaware corporation, which then marketed the application in United States and abroad; despite defendant's waiver of defenses to India's jurisdiction, alleged acts of defendant—holding, marketing and monetizing purloined asset—occurred in Delaware and along with other factors justified denial of FNC motion).

*Abrahamsen* makes a passing reference to the FNC doctrine as presupposing "at least two forums in which the defendant is amenable to process." 2014 WL 2884870, at *2. However, the briefing in *Abrahamsen* occurred prior to *Martinez II* and *both* parties in *Abrahamsen* argued that Norway was an adequate alternate forum. *Id.* *Pipal* does not mention an "adequate alternate forum" at any point; it merely observed that courts may weigh a moving defendant's amenability in another jurisdiction as one consideration among others relating to whether another case is pending in a different forum under the fifth *Cryo-Maid* factor. *See* 2015 WL 9257869, at *9.

[31] Oral Arg. Tr. at 10:18–22.

requirement, Delaware cases decided after *Ison*, such as *Mar-Land Industrial Contractors, Inc. v. Carribean Petroleum Refining L.P.*[32] and *Candlewood Timber Group, LLC v. Pan American Energy, LLC*,[33] as well as the *Cryo-Maid* factors themselves, implicitly assume that this threshold inquiry exists.

This Court recognizes that the *Cryo-Maid* factors[34] employed in Delaware mirror somewhat the "private and public interest factors" considered in the federal FNC analysis.[35] However, Plaintiff reargues that even before the six enumerated *Cryo-maid* factors can be considered, the Delaware FNC analysis requires the court to first focus on the *defendant* (his amenability to process in another forum and the *plaintiff* (the adequacy of his remedy). Only after the Court looks to these two very distinct defendant and plaintiff considerations, Plaintiff argues, can it

---

[32] 777 A.2d 774 (Del. 2001).

[33] 859 A.2d 989 (Del. 2004).

[34] *See supra* note 7 (outlining *Cryo-Maid* factors).

[35] "The factors pertaining to the private interests of the litigants included the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Piper Aircraft*, 454 U.S. at 260 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "The public factors bearing on the question included the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Gilbert*, 330 U.S., at 509).

begin to consider whether this forum presents an overwhelming hardship upon the defendant. Plaintiffs' argument fails for a number of reasons.

To begin, this Court disagrees with Plaintiffs' reading of the *Ison* decision. *Ison* is quickly distinguished from the instant case, as it involved foreign plaintiffs injured in foreign *English*-speaking countries who alleged injuries that resulted from exposure to the defendant's fungicide; importantly, most of the evidence was located in Delaware, the defendant's place of incorporation and principal place of business.[36] Moreover, the fungicide at issue in that case was also researched and developed in Delaware.[37] With this factual background, the Court appropriately denied dismissal on FNC grounds.[38]

Plaintiffs rely on portions of the *Ison* decision that cite to and quote *Piper Aircraft Co. v. Reyno*, wherein the United States Supreme Court set out the federal FNC standard.[39] The carefully selected portions of *Ison* upon which Plaintiffs rely neither states nor implies that the Delaware Supreme Court was choosing to

---

[36] 729 A.2d at 834–35, 843, 847.

[37] *Id.* at 836, 843, 847.

[38] *Id.* at 835 (holding trial courts cannot rest analysis on conclusion that "there is a better forum" and finding defendant's contacts with Delaware essentially negated any claim of hardship).

[39] 454 U.S. at 241 n.6, 254 & n.22. The *Ison* Court provided the following summary of the federal FNC standard: "First, the defendant must be amenable to process in the alternate forum. Second, the remedy offered by the alternate forum must not be 'clearly inadequate or unsatisfactory.' Third, if these prongs are satisfied, the trial court must balance certain private and public interest factors to determine whether dismissal is appropriate." *Ison*, 729 A.2d at 839 (footnotes omitted).

12

"explicitly follow" the federal FNC standard in Delaware FNC analyses. Rather, a complete reading of *Ison* demonstrates that the description of the federal FNC standard was provided by the *Ison* Court to explain, in part, how the FNC standard employed in Delaware is *different* from the federal standard.[40]

Beyond *Ison,* Plaintiffs' assertion that *Mar-Land* and *Candlewood* implicitly conducted a threshold inquiry into the existence of an adequate alternate forum where litigation can continue is similarly unavailing. *Mar-Land* states and implies nothing about whether those parties addressed or had otherwise acknowledged that there was an adequate alternate forum, and certainly nothing regarding a *threshold* requirement of an adequate alternate forum in Delaware's FNC analysis.[41] Rather, as the Delaware Supreme Court expressly recognized in *Mar-Land,*

> Our jurisprudence makes clear that, on a motion to dismiss for *forum non conveniens,* whether an alternative forum would be more convenient for the litigation, or perhaps a better location, is irrelevant. In determining whether to grant or deny a motion to dismiss on *forum*

---

[40] Notably, the *Ison* Court's iteration of the federal FNC standard appears in a section titled "*Forum Non Conveniens in Other Jurisdictions.*" *Ison,* 729 A.2d at 838–42. That section follows the "*Delaware Forum Non Conveniens Jurisprudence*" section, which articulates the "overwhelming hardship" standard as analyzed through the *Cryo-Maid* factors. *Id.* at 837–38. In its examination of three different states as examples of the "various approaches taken by individual state courts considering *Piper Aircraft,*" the Court explained that "Connecticut has acknowledged the *Piper Aircraft* standard, but is closely aligned with Delaware jurisprudence," thus confirming that Delaware jurisprudence diverges from the federal standard articulated in *Piper Aircraft. Id.* at 840.

[41] 777 A.2d at 779 (denying motion to dismiss on FNC grounds where defendant failed to allege hardship it would face in Delaware with particularity and had not otherwise detailed grounds of any potential defenses it planned to assert; trial court erred by applying balancing test to find Puerto Rico was "a better forum," where true test is "overwhelming hardship").

13

*non conveniens* grounds, **the trial court is not permitted to compare Delaware, the plaintiff's chosen forum, with an alternate forum and decide which is the more appropriate location for the dispute to proceed.** Rather, the trial court must focus on whether the defendant has demonstrated with particularity, through the *Cryo-Maid* factors, that litigating in Delaware would result in an overwhelming hardship to it.[42]

*Candlewood* also says nothing about a threshold inquiry into the existence of an adequate alternate forum.[43] Furthermore, this Court's previous FNC analysis was controlled by the more recent holding in *Martinez II*, where our Supreme Court reaffirmed, clarified and provided guidance regarding Delaware's FNC jurisprudence.[44] In stark contrast to the passing mention made by the trial court in *Martinez v. E.I. DuPont De Nemours & Co.* ("*Martinez I*"),[45] the Delaware

---

[42] *Id.* (emphasis added) (citations omitted).

[43] *See* 859 A.2d at 998–1004 (denying motion to dismiss on FNC grounds in action by property owner against oil and gas producer for damage caused by drilling operations on owner's property located in Argentina, where defendant failed to allege hardship it would face in Delaware with particularity and had at other times entered into contracts with forum selection clauses requiring it to litigate in the United States, even if no clause was alleged in the instant action; trial court erred by balancing parties' interests rather than focusing on whether moving defendant had demonstrated it would suffer overwhelming hardship if forced to litigate in Delaware). Indeed, the *Candlewood* Court was not presented with that issue; the defendant in that case had filed an original action in the Supreme Court of Argentina against the plaintiffs seeking a declaration that "the parties' dispute was subject to the *original jurisdiction*" of Argentine courts. *Id.* at 992 (emphasis added).

[44] 86 A.3d at 1104–06, 1111–13.

[45] 82 A.3d 1, 29 (Del. Super. 2012) [hereinafter *Martinez I*] ("As an initial inquiry in a *forum non conveniens* analysis, the Court is required to determine whether Argentine courts are capable of providing an adequate alternate forum."), *aff'd*, 86 A.3d 1102 (Del. 2014), *as revised* (Mar. 4, 2014). However, the trial court also stated that "[c]omparison of the forum chosen by the Plaintiff with an alternative jurisdiction in order to determine which is more appropriate, is not

14

Supreme Court did not include any reference to an "adequate alternate forum" requirement in its various reiterations of Delaware's FNC standard in *Martinez II*:

> Delaware's jurisprudence in *forum non conveniens* cases is well established. Where there is no issue of prior pendency of the same action in another jurisdiction, our analysis is guided by what are known as the "*Cryo-Maid*" factors[.]
>
> . . .
>
> Accordingly, to prevail under the *forum non conveniens* doctrine, a defendant must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that the defendant will face "overwhelming hardship" if the lawsuit proceeds in Delaware.
>
> . . .
>
> To summarize, although the overwhelming hardship standard is stringent, it is not preclusive. Accordingly, in deciding *forum non conveniens* motions to dismiss, Delaware trial judges must decide whether the defendants have shown that the *forum non conveniens* factors weigh so overwhelmingly in their favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to them.[46]

A comprehensive review of case law leading up to *Martinez II* does not demonstrate that the lower courts were required to find the existence of an

---

permitted and is considered irrelevant to the analysis. The sole basis for deciding a motion to dismiss on *forum non conveniens* grounds is whether the *Cryo-Maid* factors indicate that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware." *Id.* at 28 (footnote omitted) (citing *Mar-Land*, 777 A.2d at 779).

[46] *Martinez II*, 86 A.3d at 1104, 1106. The Delaware Supreme Court's efforts to distance Delaware's FNC analysis from that employed in federal courts is further evidenced by the clear reference to how a particular consideration would be evaluated "[u]nder federal jurisprudence," again reinforcing our Supreme Court's recognition that Delaware's FNC test differs from the federal FNC test. *Id.* at 1107 n.30.

adequate alternate forum as a prerequisite in Delaware to dismissal on FNC grounds. In *Martinez II*, our Supreme Court noted that while a Delaware trial court may evaluate "public interest" factors when considering a motion based on FNC, it expressly declined to adopt a mandate that would require this Court to address public interest factors in its FNC analysis.[47]

After *Martinez II,* Delaware's FNC analysis, and the absence of an "adequate alternate forum" requirement, was aptly summarized in *VTB Bank v. Navitron Projects Corp.*[48] In *VTB Bank*, our Court of Chancery was confronted with assertions nearly identical to Plaintiffs' argument here: that Delaware's FNC analysis begins with a threshold inquiry as to whether an adequate alternate forum is available.[49] The Court of Chancery undertook a review of Delaware precedent and found no language in our Supreme Court cases "importing this additional element into the six, well recognized *Cryo-Maid* factors."[50]

Delaware's FNC standard is concerned with the overwhelming hardship facing *the defendant* if forced to litigate in *this* forum; that inquiry does not

---

[47] *Id.* at 1112–13 & 1113 n.46 (citing *Piper Aircraft* as "*contra*" authority to that point).

[48] 2014 WL 1691250 (Del. Ch. Apr. 28, 2014) (denying motion to dismiss on FNC grounds where relief sought was for appointment of receiver and Delaware provided unique expertise in equitable remedies). *VTB Bank* was decided by Vice Chancellor Noble, who heard *Martinez II* while sitting by designation pursuant to Article IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

[49] *Id.* at *7 n.68.

[50] *Id.*

logically implicate consideration of whether that defendant is also amenable to suit in a different jurisdiction. As explained by the *Ison* Court, whether a moving defendant possessed jurisdictional or statute of limitations defenses in another jurisdiction "relates to the convenience of the plaintiffs, not to the inconvenience of the defendant," and as such, is "not probative of the overwhelming hardship issue."[51] This is because "the overarching factor that a trial court must consider in an FNC analysis is substantial hardship to the *defendant*."[52]

Just as in *Ison*, this Court addressed jurisdictional and statute of limitations issues within the sixth *Cryo-Maid* factor but *not* as a threshold consideration or prerequisite to FNC dismissal.[53] This Court was also guided by *IM2 Merchandising & Manufacturing, Inc. v. Tirex Corp.*,[54] where the Court of Chancery analyzed jurisdictional issues within the "other practical considerations"

---

[51] 729 A.2d at 846.

[52] *Id.*

[53] *Id.* at 845–46. While the *Ison* Court did acknowledge the defendant's willingness to waive such defenses in the alternate forum, it did not hold that this was a requirement in order to prevail on an FNC motion; the Court ultimately found that this waiver was not probative—*i.e.*, it was irrelevant—on the issue of whether defendants face overwhelming hardship if forced to litigate in *Delaware*. *Id.* at 846.

[54] 2000 WL 1664168 (Del. Ch. Nov. 2, 2000) (granting motion to dismiss on FNC grounds after finding defendants would suffer overwhelming hardship, where corporations were headquartered in Canada, all relevant negotiations and contractual performance took place in Canada, most or all of evidence was located in Canada, and majority of claims were governed by Canadian law and involved difficult questions concerning boundaries between tort and contract law and available remedies).

relevant to the sixth *Cryo-Maid* factor.[55] This Court did the same here.

In accordance with those cases, this Court provided some discussion in its previous Opinion, albeit brief, as to whether Argentine courts would entertain Plaintiffs' claims before it dismissed PM Defendants on FNC grounds.[56] The discussion was not undertaken as a separate inquiry independent from this Court's determination of whether PM Defendants had demonstrated "overwhelming hardship" under the *Cyro-Maid* factors, but was considered as part of *Cryo-Maid*'s sixth factor concerning "other practical problems."[57]

Since this argument has been considered, Plaintiffs cannot obtain relief under Rule 59. The arguments are re-styled to reiterate previous positions. They have not demonstrated a change in the law, newly discovered evidence or manifest injustice that would otherwise cause this Court to reconsider its decision. By relying on Delaware Supreme Court precedent—none of which instructs Delaware courts to engage in an adequate alternate forum inquiry prior to applying the *Cryo-*

---

[55] *Id.* at \*11.

[56] *Hupan*, 2015 WL 7776659, at \*8–\*9.

[57] *Id.* at \*9. The idea that Argentina would provide a forum for this matter was also alluded to by this Court in its discussion of the fifth *Cryo-Maid* factor, the "pendency or nonpendency of a similar action or actions." *Id.* at \*8 ("[L]ike in *Martinez I,* it has been established in this case that Argentina has a Civil Code system that include elements of liability and damages. The parties have acknowledged as much since they have agreed as to the appropriate substantive law to be applied in this case."). This is similar to how the issue was addressed in *Pipal,* which approved of the consideration of a moving defendant's amenability to another forum's jurisdiction as one issue among many that may be considered under the fifth *Cryo-Maid* factor. *See supra* note 30. In *Candlewood,* whether the dispute was subject to the exclusive jurisdiction of Argentine courts was likewise analyzed within the fifth *Cryo-Maid* factor. *See supra* note 43.

*Maid* factors—no controlling precedent or legal principles were overlooked, nor did this Court misapprehend the law such as would change its underlying decision to dismiss PM Defendants on FNC grounds.

### 2. *Plaintiffs' Request for Conditions Improperly Raise New Arguments in a Rule 59 Motion*

Plaintiffs ask that this Court impose four conditions upon its already-ordered FNC dismissal of PM Defendants. To the extent Plaintiffs attempt to argue that these conditions were somehow subsumed in their opposition to dismissal on FNC grounds, this Court finds such argument to be unavailing.[58] Conversely, to the extent these conditions were not previously raised, a Rule 59(e) motion is not the appropriate vehicle to raise them for the first time,[59] where these conditions could have been raised and argued—in the alternative—during the proceedings leading up to the FNC dismissal of PM Defendants.

Where 406 foreign Plaintiffs file tort claims in this jurisdiction, they should have reasonably anticipated that all Defendants would present an arsenal of defenses. In this Rule 59 motion, however, Plaintiffs move this Court to compel PM Defendants to relinquish them. Specifically, Plaintiffs asks for PM Defendants

---

[58] Emphasizing their reliance on the federal FNC requirement and cases applying that standard, which often impose conditions, Plaintiffs suggest that they impliedly argued for these now-requested conditions in the previous proceedings when they argued that Delaware has a threshold requirement of an adequate alternate forum. This argument must be rejected, as Plaintiffs had every opportunity to argue in the alternative during the previous proceedings.

[59] *Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 2003 WL 1579170, at *1.

to be required to "stipulate" to certain conditions;[60] one of them being to compel PM Defendants to waive all statute of limitations defenses. Plaintiffs further ask that PM Defendants be ordered to waive jurisdictional defenses they may have in Argentina. The request is improper on a Rule 59 motion.

Defendant Philip Morris USA Inc. has reserved the defense of lack of personal jurisdiction in light of the recent *Genuine Parts Co. v. Cepec* decision. PM Defendants also have pending motions to dismiss under Rules 12(b)(1) and 12(b)(6) that were not considered in light of the FNC ruling. Stipulations are generally borne of the parties' agreement on matters that are not disputed in order to simplify or make litigation more efficient. It seems illogical to order a party to voluntarily submit to what is obviously disputed.

Perhaps the most troubling of Plaintiffs' proposed conditions is the one that seeks permission to reinstate their claims in Delaware if Argentine courts refuse to hear this matter for any non-merits based reason.[61] Plaintiffs argue that one of the considerations in favor of dismissal was so that novel issues of Argentine law could be addressed by the Argentine courts. They claim that this consideration

---

[60] *See* Oral Arg. Tr. at 7:4, 18:8, 29:4, 31:23–32:1; Pls.' Mot. Clarification, or Alternatively, Rearg. at 6.

[61] Again, the record is not clear as to whether Plaintiffs withdrew this condition at oral arguments. *See supra* note 20. This Court therefore addresses this condition out of an abundance of caution.

"won't ever happen" if PM Defendants "don't show up" in Argentine courts.[62]

To accept Plaintiffs' request would effectively serve to invalidate the *Cryo-Maid* analysis whenever a foreign court decided, for whatever reason, not to hear the matter. Plaintiffs' request for reinstatement in Delaware should Argentina decline to hear their case ignores—and asks this Court to vitiate—the prior finding that PM Defendants would suffer overwhelming hardship if forced to litigate here. The request further fails as it derives from Plaintiffs' assertion that Delaware law implicitly adopted the federal FNC threshold inquiry standard of an adequate alternate forum. In other words, to compel PM Defendants to return to Delaware is a roundabout way of making their FNC dismissal contingent upon their ability to meet the additional burden of demonstrating that an adequate forum exists elsewhere. As previously discussed, this Court's interpretation of FNC analysis does not require this contingency.

Plaintiffs do not provide Delaware authority that would permit this Court to impose such onerous conditions.[63] Plaintiffs offer federal cases that have required such conditions, but such imposition makes more sense in jurisdictions that also require an adequate alternate forum before dismissing on FNC grounds. Here, this Court is hard-pressed to understand the logical connection of such conditions to

---

[62] Oral Arg. Tr. at 13:14–23.

[63] *Id.* at 20:23–21:15.

21

FNC dismissals in a jurisdiction like Delaware, which focuses on a moving defendant's overwhelming hardship if forced to litigate here.[64] Such a standard does not implicate a plaintiff's ability to litigate elsewhere, and thus cannot reasonably provide a basis to impose the conditions that Plaintiffs request through their Rule 59(e) motion.

This Court declines to impose the proposed conditions on PM Defendants. Not only are these conditions not logically implicated in an analysis focusing on a moving defendant's overwhelming hardship in this jurisdiction, but the conditions are requested after Plaintiffs had an opportunity to be heard on these issues during this Court's consideration of the underlying FNC motions. To the extent these conditions were impliedly argued for in the prior proceedings, they are inappropriately rehashed in Plaintiffs' instant motion. Furthermore, to the extent these conditions were not more expressly raised by Plaintiffs during the previous proceedings, Plaintiffs cannot now raise them for the first time in a Rule 59(e) motion without demonstrating newly discovered evidence, a change in the law or manifest injustice.

---

[64] It is for the same reason that these conditions are not "modest" as Plaintiffs suggest, or at least would not be modest if imposed in this case. *See* Oral Arg. Tr. at 21:16–17. Whether these conditions are otherwise "modest" when imposed pursuant to a federal system that considers the existence of an adequate alternate forum within its FNC analysis is an issue this Court need not address, except to say that it certainly does not consider these conditions to be "modest" here, in light of the timing of Plaintiffs' request, the absence of precedent from our Supreme Court endorsing the imposition of such conditions, and Delaware's focus on whether the moving defendant would suffer overwhelming hardship if forced to litigate in this forum.

Plaintiffs made their strategic choice to litigate in Delaware. This Court sympathizes with the Argentine Plaintiffs who wish to have their day in court but, as outlined in this Court's previous Opinion, their forum selection presents a plethora of practical problems. Without reiterating what was fully discussed in the Opinion, Plaintiffs chose to sue in a place that has no connection to where they were allegedly injured. Their home is Argentina and any presumption that their choice of forum should be respected was not as strong because of this fact—they are foreign nationals.[65] The Court weighed and balanced the looming and burdening challenges created by their forum selection under *Cryo-Maid* and found in favor of PM Defendants. Beyond language, it reviewed other legal, medical, geographical, geological, social and cultural barriers that would have to be faced if this matter remained in Delaware.

Mostly, this Court gave great weight to the novelty and importance of the Argentine legal issues presented in this case. This Court finds that it is a presumptuous intrusion upon Argentina to decide unsettled issues of her foreign tort law. Delaware has no local interest to warrant such intrusion, especially where Defendant Philip Morris Global Brands Inc.'s single strand of incorporation to Delaware has no rational connection to Plaintiffs' causes of action, and Defendant Philip Morris USA Inc. is not even incorporated in this State.

---

[65] *Martinez II*, 86 A.3d at 1108, 1111. *See also Ison*, 729 A.2d at 835.

## CONCLUSION

This Court finds that Plaintiffs fail to meet their burden under Rule 59(e). Specifically, Plaintiffs fail to demonstrate that this Court overlooked controlling precedent or legal principles before dismissing PM Defendants on the basis of *forum non conveniens*. Moreover, this Court did not misapprehend the law or facts such as would change the underlying outcome of its decision to dismiss PM Defendants. For the reasons stated, Plaintiffs' Motion for Clarification, or Alternatively Reargument, as to the Court's November 30, 2015, *Forum Non Conveniens* Ruling, is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc: Prothonotary
cc: All Counsel On Record (via File & Serve)

24